**STATE of Alaska, Petitioner,**

v.

**Dennis MOUSER, Respondent.**

**No. A-3279.**

Court of Appeals of Alaska.

Feb. 15, 1991.

David Mannheimer, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

Rex Lamont Butler, Anchorage, for respondent.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.*

## OPINION

BRYNER, Chief Judge.

After being charged with one count of sexual abuse of a minor in the first degree and three counts of sexual abuse of a minor in the second degree, Dennis Mouser moved to dismiss, alleging violations of his rights to due process and speedy trial. Superior Court Judge John Reese granted Mouser's motion and ordered the case dismissed. We granted the state's petition for review of the superior court's order of dismissal and directed the parties to submit briefs on the merits. We now reverse.

## FACTS

The essential facts are undisputed. In May of 1986, the Anchorage Police Department received a report that Dennis Mouser had sexually abused his stepdaughter. Police interviewed the stepdaughter and confirmed the report. They also attempted to interview Mouser but learned that he was out of town.

. Mouser returned to Anchorage at the end of summer. An officer interviewed him on October 15, 1986. In the course of the interview, the officer informed Mouser of the allegations that his stepdaughter had made. Mouser said he did not recall any specific act of abuse with his stepdaughter, but he admitted entering her room while naked, acknowledged that he had probably done some of the things she accused him of, and expressed "deep guilt" about his conduct.

Mouser was not taken into custody during this interview. In December of 1986 the police referred Mouser's case to the Anchorage District Attorney's office. The district attorney's office, in turn, asked for several follow-up interviews, which were completed in March of 1987.

Nothing further happened in the case until September, 1987, when Mouser telephoned the Anchorage Police Department to ask about the status of his case. The officer assigned to the case told Mouser that the district attorney's office had not yet made a decision whether to prosecute. Mouser proceeded to discuss the case with the officer, and, for the first time, he admitted several specific instances of sexual touching with his stepdaughter.

After the interview, the investigating officer called the district attorney's office and requested immediate action on the case. As a result, the state filed an information on September 16, 1987, charging Mouser with one count of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor.

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

On September 28, the court issued a summons for Mouser to appear for arraignment on October 14, 1987. On that date, however, the summons was returned unserved, and the court issued a warrant for Mouser's arrest. The arrest warrant remained unserved until May 25, 1989—more than nineteen months after its issuance—when Mouser was arrested on an unrelated matter in Whittier, Alaska.

Mouser eventually moved to dismiss, arguing that the delay in filing and serving him with charges violated his constitutional rights to due process and speedy trial. In a supporting affidavit, Mouser stated that, during the months immediately following his stepdaughter's report of abuse, he became concerned about the pending investigation and asked about the possibility of obtaining a public defender. He was told, however, that he could not receive a public defender until after he had been arrested and charged. According to Mouser, he then contacted and spoke with the police in an effort to expedite the investigation, so that he would be afforded an opportunity to consult with an attorney. Mouser's affidavit further stated that, when "[n]othing seemed to be done after my giving of the first statement," he went to the police and gave another statement. Mouser averred that, "from there, the matter seemed to just drop."

Mouser's affidavit went on to relate that, from August of 1987 through May of 1989, Mouser lived and worked openly in Anchorage, primarily at his ex-wife's residence, and that he did nothing to conceal his identity or whereabouts from the police. Mouser claimed that, during this time, no police officer ever contacted him, and he received no notice of the outstanding charges or arrest warrant.

In the memorandum of law accompanying his affidavit and motion to dismiss, Mouser generally asserted that the delay between the inception of the investigation and his arrest had caused prejudice to his case:

> Defendant contends that the excessive amount of time between the act alleged and the accusation will work prejudice on any attempt on his part to defend against such accusation in that it will be a practical impossibility to identify potential witnesses. Further, such delay would render it impossible to expect that any witnesses, if identified, could be expected to remember the circumstances of the days and times in question. Defendant frankly states that he, himself, cannot even be certain of his whereabouts and actions on said dates and at such times after so extended a period of delay.

Mouser asserted that the extensive nature of the delay violated his rights under the speedy trial and due process clauses of the United States and Alaska Constitutions.

The state opposed Mouser's motion to dismiss, contending that the delay in bringing him to trial violated no constitutional prohibitions. The state argued, first, that Mouser had failed to establish a violation of his due process right to be protected against unreasonable preaccusation delay because the delay in his case was justified and Mouser had advanced only a conclusory allegation of prejudice. Second, the state argued that Mouser had not been deprived of his constitutional right to a speedy trial because, in the state's view, that constitutional right did not attach until Mouser was actually arrested.

Judge Reese conducted a hearing on Mouser's motion. Mouser presented no evidence at the hearing. The state called two witnesses. Anchorage Police Officer Karen Rhodes described the investigative efforts involved in Mouser's case and explained the period of delay from the initial report of abuse in May of 1986 until the filing of the information against Mouser in September of 1987. Warrant Officer David Daniel also testified, describing the efforts made to serve Mouser with the summons to appear for arraignment during the weeks between the filing of the information and the issuance of the arrest warrant of October 14, 1987, when the summons was returned unserved.

The state called no witnesses to justify the ensuing delay in serving Mouser with the arrest warrant. Nor did the state attempt to discredit Mouser's claim that he

was openly living and working in Anchorage during the period of almost nineteen months when the arrest warrant was outstanding.

At the conclusion of the evidentiary hearing, Judge Reese granted Mouser's motion to dismiss. In declaring his reasons for dismissing the case, the judge focused on the delay of almost twenty months between the filing of charges and Mouser's arrest. Judge Reese noted that the state had failed to present any evidence of due diligence in serving Mouser with the arrest warrant during this period. For this reason, Judge Reese found the period of delay unreasonable.

Turning to the issue of prejudice, Judge Reese found that the prospect of lost witnesses and failed memories, coupled with the anxiety that the pending investigation must have caused Mouser, amounted to "a colorable amount of prejudice, real, not *de minimus* and not theoretical ... not enormous but real." Balancing this prejudice against the almost two years of unexplained delay, Judge Reese concluded that the charges against Mouser should be dismissed.

Shortly after the hearing, Judge Reese issued a written order further specifying his reasons for dismissing the case: "[E]xcessive, unexplained delay in giving notice of [the] charge to defendant ... violat[ed] his right to speedy trial and due process of law.... The nearly two years delay in serving of the warrant after [Mouser] was charged substantially prejudiced his rights."

The state later moved for reconsideration of the dismissal order. In its motion, the state reiterated the arguments that Mouser's right to a speedy trial did not attach until after he was arrested and that his conclusory allegation of lost witnesses and faded memories was inadequate to support dismissal on due process grounds for unreasonable preaccusation delay. The state also submitted an affidavit executed by the prosecutor who was assigned to the case at the trial level. The affidavit described a conversation between counsel and William Hughes of the Alaska State Troopers' Anchorage warrant section. According to the affidavit, Hughes indicated that his review of trooper records established that the troopers had apparently made several efforts to serve the arrest warrant on Mouser but had been unsuccessful. Based on this information, the state argued that Mouser was not readily available during the period when his arrest warrant was outstanding and, indeed, may have been intentionally avoiding service of process.

Judge Reese denied the state's motion for reconsideration, finding that, even given the new information, the state had failed to establish due diligence in serving the arrest warrant on Mouser. The state then petitioned this court for review, claiming that Judge Reese erred in dismissing Mouser's charges. We granted the state's petition and directed the parties to submit briefing on the merits.[1]

## DISCUSSION

On review to this court, the state renews its challenge to the superior court's dismissal order. As we have indicated, the court's written order specifies two constitutional violations: a violation of Mouser's

---

1. In opposition to the state's petition for review, Mouser argued that this court had no authority to grant a petition by the state seeking appellate review of an order of dismissal. Mouser has repeated this argument in his brief on the merits. Mouser relies on the provisions of AS 22.-07.020 and Appellate Rule 202(c), which preclude the state from appealing in a criminal case except "to test the sufficiency of the indictment or on the ground the sentence is too lenient."

Mouser's argument is without merit. AS 22.-07.020(d) and Appellate Rule 202(c) act only to deprive the state of an appeal as a matter of right. Neither provision purports to preclude the state from seeking appellate review on a discretionary basis, and neither restricts this court from granting discretionary review. Both the Alaska Supreme Court and this court have previously recognized that a petition for review, as provided for under Part 4 of the Appellate Rules, is the appropriate vehicle for the state to rely on when it seeks discretionary review of a non-appealable dismissal order. *See Kott v. State*, 678 P.2d 386, 390–91 (Alaska 1984); *Stocker v. State*, 741 P.2d 1215, 1216 (Alaska App.1987).

right to due process and of his right to a speedy trial. We consider each right separately.

## A. *Due Process*

■ The due process clauses of the United States and Alaska Constitutions [2] protect the accused against unreasonable preaccusation delay. *See, e.g., United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Wilson v. State*, 756 P.2d 307, 310 n. 4 (Alaska App. 1988).

■ Because the essence of due process is basic fairness, the chief concern of the rule prohibiting unreasonable preaccusation delay is the impact of the delay on the accused's ability to present a defense, and not on the length of the delay as such:

> [T]he prohibition against preindictment delay protects the accused from improper or unreasonable conduct by the government in the bringing of a criminal charge. Although this prohibition can operate to preclude conviction after a relatively short period of delay, it is triggered only if the accused can demonstrate that the delay in filing charges was unreasonable and resulted in actual prejudice.

*State v. Creekpaum*, 732 P.2d 557, 567 (Alaska App.1987) (citations omitted), *rev'd on other grounds*, 753 P.2d 1139 (Alaska 1988).

■ Thus, to prevail on a claim of unreasonable preaccusation delay, the accused must establish not only "[t]he absence of a valid reason for the delay," but also "the fact of prejudice...." *York v. State*, 757 P.2d 68, 70 (Alaska App.1988). In considering a motion for unreasonable preaccusation delay, the trial court must "strike a balance weighing the reasonableness of the justification [for the delay] against the degree of prejudice to the defendant...." *Alexander v. State*, 611 P.2d 469, 475 (Alaska 1980). The burden is on the accused to establish both the absence of a valid reason for delay and actual prejudice:

In order to assess a claim of preindictment delay, courts must weigh the governmental interest in postponing accusation against the defendant's interest in early notice of the pending charges. The absence of a valid reason for the delay and the fact of prejudice must be established for the defendant to prevail. The two factors relevant in considering preindictment delay are (1) the reasonableness of the delay, and (2) the resulting harm to the accused:

> The burden of proof is on the defendant to show the absence of a valid reason for the delay and the fact of prejudice, though the state has the burden, once the issue is raised, to come forward with reasons for the delay. When the reasons are advanced, the defendant must show that they do not justify the delay.

*York*, 757 P.2d at 70–71 (quoting *Alexander*, 611 P.2d at 474) (other citations omitted).

In the present case, the pertinent period of delay amounts to slightly more than twenty months—from the filing of charges against Mouser on September 16, 1987, to his arrest on May 25, 1989. On review, the state does not challenge the superior court's finding of a lack of due diligence in arresting Mouser during this time. The state nevertheless maintains that Mouser failed to make an adequate showing of actual prejudice. We agree.

■ Mouser's exclusive showing of prejudice consists of the conclusory and unverified assertion that the delay in bringing him to trial would make it difficult for him to find witnesses and that, in any event, the memories of any witnesses he might find would inevitably have faded. The trial court accepted this generalized assertion as an adequate showing of prejudice. The court reasoned that, given the length of the delay, Mouser's claim of faded memory and possibly missing witnesses was plausible. It thus concluded that Mouser had shown "a colorable amount of

---

**2.** The United States Constitution, amend. XIV; Alaska Constitution, art. I, § 7.

prejudice ... not enormous but real...." [3] This finding is problematic because it overlooks the distinction between actual prejudice and possible prejudice. At most, Mouser established a possibility of prejudice stemming from the state's delay in effecting his arrest.

■ The problem of lost witnesses and faded recollections is not unique to cases involving protracted delay and does not in itself establish a denial of fundamental fairness. As the Alaska Supreme Court said in *Yarbor v. State*, 546 P.2d 564, 568 (Alaska 1976): "We think it appropriate to note at the outset that to some degree there are faded recollections in every criminal action...." Moreover, absent specific evidence, there is no reason to suppose that the prospect of faded memories and lost witnesses stemming from lengthy delay will invariably be prejudicial to the accused:

> [D]elay is a two-edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden.

*United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986).[4]

■ Here, Mouser's burden was to show actual prejudice, not merely potential or possible prejudice. By actual prejudice we mean a particularized showing that the unexcused delay was likely to have a specific and substantial adverse impact on the outcome of the case. *Cf. State v. Jones,*

759 P.2d 558, 568 (Alaska App.1988) (discussing prejudice requirement in the context of a claim of ineffective assistance of counsel).

The Alaska Supreme Court has consistently recognized that generalized claims of lost witnesses and faded memories do not suffice as prejudice supporting the finding of a violation of due process. *See, e.g., Dixon v. State*, 605 P.2d 882, 891–92 (Alaska 1980); *Prenesti v. State*, 594 P.2d 63, 65 (Alaska 1979); *Yarbor*, 546 P.2d at 568. The United States Supreme Court has likewise distinguished between possible and actual prejudice and has expressly recognized that the generalized prospect of faded memories and lost witnesses does not amount to actual prejudice:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

*Marion*, 404 U.S. at 325–26, 92 S.Ct. at 466.

In circumstances similar to Mouser's, this court has also previously emphasized that, to prevail on a claim of preaccusation delay, the accused must make a particularized showing of actual and substantial prejudice: "At the very least, [the accused] must show that but for the delay, he would have been able to present favorable evi-

---

**3.** In ordering dismissal, the trial court additionally found prejudice in the anxiety that it believed Mouser must have suffered due to the charges pending against him. For purposes of due process analysis, however, anxiety does not in itself amount to prejudice. The due process prohibition against unreasonable delay is aimed at assuring that delay does not unfavorably affect the outcome of the accused's case. Because anxiety, no matter how real, will not, in itself, impair the accused in defending against a charge, it does not qualify as prejudice in the due process context. *Cf. Nickerson v. State*, 492 P.2d 118, 121 (Alaska 1971) (indicating that, even in the context of the constitutional right to a speedy trial, anxiety, standing alone, would seldom warrant dismissal).

**4.** It is particularly questionable under the circumstances of this case whether it would be appropriate to presume prejudice from Mouser's generalized assertion of possibly unavailable witnesses and failed memories. Early in the case, Mouser was apprised that an investigation was pending, and he was specifically informed of the accusations that had been made against him. In identical situations, the Alaska Supreme Court has indicated that the state should not be held accountable for faded memories or lost witnesses, at least unless the defendant is shown to have acted with reasonable diligence in attempting to preserve evidence after being given notice of a pending investigation. *See Alexander*, 611 P.2d at 475; *Prenesti v. State*, 594 P.2d 63, 65 (Alaska 1979).

dence. Mere speculation about the loss of favorable evidence is insufficient." *Wilson,* 756 P.2d at 311.

■ Absent a showing of some specific adverse impact stemming from delay, the requirement of showing prejudice is not met, and the process of balancing prejudice against the justification for delay is simply not triggered, for, as we have previously said, "even if there is no reason advanced for the delay, the defendant must still show actual and substantial prejudice in order to prevail...." *Id. See also Dixon,* 605 P.2d at 891–92; *Prenesti,* 594 P.2d at 64–65.

Here, Mouser's generalized claim of possibly lost witnesses and failed memories failed to meet the actual prejudice requirement and thus did not support a finding that his right to due process was violated.

### B. *Speedy Trial*

We now turn to the trial court's alternative ground for dismissal: its finding that the delay in arresting Mouser deprived him of his right to a speedy trial, as secured by the United States and Alaska Constitutions.[5]

■ In contrast to the due process clause's outcome-oriented focus on actual prejudice, the constitutional guarantee of speedy trial deals directly with delay and addresses an array of delay-related concerns:

> The speedy trial guarantee has been seen as fulfilling at least three purposes: (1) to prevent harming the defendant by a weakening of his case as evidence in memories of witnesses grow stale with the passage of time; (2) to prevent prolonged pretrial incarceration; and (3) to limit the infliction of anxiety upon the accused because of longstanding charges.

*Rutherford v. State,* 486 P.2d 946, 947 (Alaska 1971). *See also Glasgow v. State,* 469 P.2d 682, 685 (Alaska 1970); *Creekpaum,* 732 P.2d at 567. For this reason, a

showing of actual prejudice is not a prerequisite to relief under the speedy trial clause; a showing of possible prejudice may suffice. *Moore v. Arizona,* 414 U.S. 25, 26–27, 94 S.Ct. 188, 189–190, 38 L.Ed.2d 183 (1973). *See also Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). When delay is extensive, prejudice may be presumed. *Compare Rutherford,* 486 P.2d at 948–49, and *Glasgow,* 469 P.2d at 684–85 (presuming prejudice from a delay of over fourteen months between charge and trial), *with Tarnef v. State,* 492 P.2d 109, 112 (Alaska 1971), and *Nickerson v. State,* 492 P.2d 118 (Alaska 1971) (requiring defendant to demonstrate prejudice in order to prevail).

Before considering the superior court's finding of a speedy trial violation in the present case, however, we must confront the threshold question of whether Mouser's constitutional right to a speedy trial applied during the disputed period of delay. The unexcused delay in this case occurred after Mouser had been charged but before he was arrested. According to the state, Mouser's constitutional right to a speedy trial did not attach until after his arrest.

■ For this proposition, the state cites two recent United States Supreme Court decisions, *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), and *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In both cases, the Court emphasized that a core concern of the speedy trial right is protection against restraints on liberty that typically follow arrest on formal charges. Relying on the discussion in *Loud Hawk* and *MacDonald,* the state reasons that, because Mouser was not subject to any restraint until he was arrested and served formal notice of his pending charges, his constitutional right to a speedy trial had not attached. The state insists that all of the delay occurring before Mouser's arrest can only be analyzed under the due process preaccusation delay standard.[6]

---

**5.** United States Constitution, amend. VI; Alaska Constitution, art. I, § 11.

**6.** To bolster this argument, the state cites Alaska's speedy trial rule, Alaska R.Crim.P. 45,

which establishes a 120–day period within which the accused must be brought to trial. Under this rule, the mere filing of a charge does not trigger the 120–day speedy trial period. In-

We do not think the issue is as clear-cut as the state suggests. Cases decided under both the United States and Alaska Constitutions have usually identified two alternative points at which the right to speedy trial attaches:

[T]he right to a speedy trial does not attach before the defendant becomes formally accused—that is, the subject of a filed complaint *or* an arrest.

*Yarbor,* 546 P.2d at 567 (emphasis added) (relying on *Marion,* 404 U.S. at 321–22, 92 S.Ct. at 463–64).

This rule has commonly been understood to mean that the accused's right to a speedy trial can be triggered either by the filing of a formal charge or by an arrest: "The general rule [is] that the speedy trial right attaches at the time of arrest or formal charge, *whichever comes first....*" W.R. LaFave and G. H. Israel, 2 *Criminal Procedure* § 18.1 at 400 (1984) (emphasis added).

Although there is disagreement as to whether the filing of a secret indictment will trigger the speedy trial right prior to arrest, *e.g., compare United States v. Watson,* 599 F.2d 1149, 1155 (2d Cir.1979), *with Stewart v. State,* 170 Ind.App. 696, 354 N.E.2d 749, 752 (1976), there appears to be general consensus that the right to speedy trial attaches upon the formal filing of a public charge, at least if the charge is in a form that would vest the court in which it is filed with jurisdiction to try the accused. *See* LaFave and Israel, § 18.1 at 120 (1989 Supp.); *United States v. Dennard,* 722 F.2d 1510, 1512–13 (11th Cir.1984); *Serna v. Superior Court,* 40 Cal.3d 239, 219 Cal. Rptr. 420, 432, 707 P.2d 793, 805 (1985); *State v. Gee,* 298 Md. 565, 471 A.2d 712, 715 (1984); *State v. Wirth,* 39 Wash.App. 550, 694 P.2d 1113, 1115 (1985).

 While many forms of prejudice that the sixth amendment's speedy trial clause seeks to prevent arise after the ac-

cused is arrested or receives actual notice of a pending charge, some occur upon the filing of a formal, public charge, regardless of notice to the accused. Exposure to public obloquy is one of the core concerns of the sixth amendment. *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. This concern is triggered by the filing of a formal, public accusation. As the California Supreme Court recognized in rejecting an argument similar to the state's speedy trial argument in Mouser's case, it is unrealistic to assume that no adverse consequences will flow from a publicly pending criminal charge, even if the accused remains unaware that it has been filed. *See Serna,* 219 Cal.Rptr. at 433–34, 707 P.2d at 806–07.

 The Alaska Supreme Court, applying our state constitution, has made it clear that the right to a speedy trial attaches when "the defendant becomes formally accused...." *Yarbor,* 546 P.2d at 567. As explained in *Yarbor,* the principal reason against extending the protections of the speedy trial clause to periods of delay occurring before formal accusation is the need to avoid "a rule which would prompt district attorneys to initiate prosecutions without waiting for more than the minimum evidence to establish probable cause...." *Id.* at 566. This danger is nonexistent in Mouser's case. Here, the district attorney's office clearly manifested its decision to prosecute Mouser when it formally and publicly filed the information charging him with sexually abusing his stepdaughter. We conclude that, at that point, Mouser became "formally accused," and his constitutional right to a speedy trial attached.

 We turn to the issue of whether Mouser's right to a speedy trial was violated. In arguing that this right was violated, Mouser correctly points out that the unexcused delay in his case, approximately

---

stead, the period begins running "from the date the defendant is arrested, initially arraigned, or from the date the charge is served upon the defendant, whichever is first." Alaska R.Crim.P. 45(c)(1). It is clear that Mouser's rights under the speedy trial rule did not attach until he was arrested. The speedy trial rule,

however, is also not determinative of the constitutional right to speedy trial. Although meant to address the same concerns as the constitutional right to speedy trial, Criminal Rule 45 was not intended as a procedural or substantive embodiment of that constitutional right. *See Snyder v. State,* 524 P.2d 661, 664 (Alaska 1974).

twenty months, must be deemed prejudicial. The Alaska Supreme Court has twice held unexplained delays of fourteen months or more to be presumptively prejudicial. *See Rutherford,* 486 P.2d at 951–52; *Glasgow,* 469 P.2d at 688–89. Mouser is nonetheless mistaken in assuming that a delay of sufficient duration to be presumptively prejudicial invariably violates the constitutional right to speedy trial.

Federal law appears to be well settled that presumptively prejudicial delay is the point of departure rather than the point of termination for speedy trial analysis. In *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court described the function "presumptive prejudice" plays in the overall process of determining whether a speedy trial violation has occurred. *Barker* adopted a "balancing test in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2192 (footnote omitted). This balancing test consists of four factors:

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Id.* (footnote omitted).

*Barker* went on to consider each factor in greater detail. In discussing the first factor—length of delay—*Barker* explained the role of presumptive prejudice:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.

*Id.* Thus, under *Barker,* a "delay which is presumptively prejudicial" does not in itself violate speedy trial; it merely requires consideration of the remaining factors in the balance.

Alaska's seminal speedy trial cases, *Rutherford,* 486 P.2d 946, and *Glasgow,* 469 P.2d 682, were decided before the United States Supreme Court decided *Barker.* Although both *Rutherford* and *Glasgow* recognized that an unexcused delay of fourteen months or more is presumptively prejudicial, neither explicitly adopted a balancing test. Since the United States Supreme Court's decision in *Barker,* the Alaska Supreme Court has had no occasion to expressly adopt or reject the balancing test adopted in that case. Because the Alaska Supreme Court's decisions in *Rutherford* and *Glasgow* were specifically based on the Alaska Constitution's speedy trial clause and not on the sixth amendment to the United States Constitution, the Alaska Supreme Court could conceivably elect to adopt a more protective standard under our constitution than *Barker* adopted under the federal constitution.

In the present case, however, Mouser has advanced no cogent reasons for applying a different test than that adopted in *Barker.* In this respect, it is significant that the Alaska Supreme Court's decisions in *Rutherford* and *Glasgow,* while applying the Alaska Constitution, relied primarily on speedy trial decisions that the United States Supreme Court had recently decided. It is further significant that, in at least one pre-*Barker* speedy trial case decided after *Rutherford* and *Glasgow,* the Alaska Supreme Court suggested the appropriateness of a balancing test essentially similar to the test later formulated by the United States Supreme Court. *See Tarnef,* 492 P.2d at 112. For these reasons, we find the *Barker* test appropriate for evaluation of Mouser's speedy trial claim.

In the present case, neither party called the superior court's attention to the *Barker* test. Accordingly, even though the court mentioned some of the *Barker* criteria—the length and nature of the delay and the extent of prejudice stemming from it—it did not purport to apply the correct balancing formula. The court's failure to apply the correct test requires us to vacate

the order of dismissal and remand this case for application of the *Barker* test. To provide guidance to the court and the parties on remand, we believe it appropriate to offer some additional observations.

As we have already indicated, the first factor of the test—length of delay—is readily satisfied. The unexcused delay in Mouser's case fell well within the range of delay that the Alaska Supreme Court deemed presumptively prejudicial in *Rutherford* and *Glasgow*.

■ The next factor is the reason for the delay. The state has not challenged, and we accept, the trial court's conclusion that the twenty-month delay in this case was unreasonable because the state failed to exercise due diligence in arresting Mouser. In considering the reasons for delay in Mouser's case, however, the superior court did not go beyond this conclusion. Finding the state responsible for the delay does not resolve the issue, however, for it is necessary to determine precisely how heavily the lack of diligence should weigh against the state. As observed by the Court in *Barker*:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531, 92 S.Ct. at 2192.

Here, the record establishes that, although the state may not have exercised due diligence in arresting Mouser, it made at least several unsuccessful efforts to serve him with the outstanding arrest warrant. Moreover, the state's limited efforts to serve the arrest warrant must be viewed in context with the initial efforts that it made to serve Mouser with a summons to appear in response to the charges.

On September 28, 1987, shortly after the original information was filed against Mouser, a summons was issued calling for

his appearance on October 14, 1987. In testimony presented at the evidentiary hearing below, the state demonstrated that a warrant officer made substantial efforts to locate Mouser prior to the October 14 appearance date. All of his efforts proved unsuccessful, however, and when the officer returned the summons on October 14, he had no viable leads to Mouser's whereabouts.

While the limited efforts subsequently made by the state to serve the arrest warrant on Mouser may seem patently inadequate when viewed in isolation, the lack of diligence certainly appears less flagrant when considered against the backdrop of the considerably more substantial unsuccessful efforts that had already been made in attempting to serve Mouser with a summons. The overall weight to be given to the state's lack of due diligence was not considered by the superior court. On remand, the court should address this issue.

■ The third factor is the effort that Mouser made to assert his speedy trial right. Although it is clear that a waiver of speedy trial is not to be presumed from failure to assert the right, the United States Supreme Court has explained that affirmative efforts to assert the right retain important evidentiary value in the overall balancing test:

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 532, 92 S.Ct. at 2193.

The superior court gave no consideration to this factor in its findings. Mouser

presented no evidence to indicate that he made any effort to inquire into the status of his case during the period of delay in question and he has advanced no explanation for the apparent lack of inquiry. The record does establish that Mouser took the initiative in contacting the police several weeks before charges were filed. At the time, he was expressly told that a charging decision was still pending in the district attorney's office. It is unclear if Mouser was told anything that could have led him to believe that charges would not be filed. It is equally unclear if Mouser made any effort over the ensuing twenty months to ascertain whether charges had been filed. These are factual issues that remain to be developed by the parties on remand and addressed by the superior court in reconsidering its decision.

 The final factor to be balanced is the extent of prejudice. As we have already noted, actual prejudice need not be established. Nevertheless, the extent of prejudice is highly relevant in the balancing process. When other factors in the balance weigh heavily against the state, a mere showing of possible prejudice may entitle the accused to prevail on a speedy trial claim. On the other hand, other factors being equal, the mere possibility of prejudice stemming from a vague claim of failed memory and potentially unavailable witnesses will deserve little weight. *See United States v. Dennard,* 722 F.2d 1510, 1513–14 (11th Cir.1984); *see also United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986). Similarly, absent other significant prejudice, the anxiety and uncertainty normally stemming from a lengthy period of delay will also seldom warrant significant weight in the balance. As the Alaska Supreme Court has held, "[i]t would be an exceptional case where such anxiety, standing alone, would constitutionally necessitate dismissal of a prosecution." *Nickerson,* 492 P.2d at 121.

Here, Mouser's conclusory assertion of possible prejudice must be considered but plainly deserves minimal weight. The factual record in this case, however, is meager

and could benefit from further development. It is conceivable that on remand Mouser will be capable of making a more specific showing of actual prejudice.

In summary, although Mouser has failed to establish a violation of his right to due process, he has made a colorable showing of a violation of his right to a speedy trial. Since the superior court did not apply the correct standard in finding a speedy trial violation, a remand is necessary.

The order of dismissal is VACATED, and this case is REMANDED for further proceedings consistent herewith.