CARNEY, Justice, concurring in part and dissenting in part, I concur in the court’s conclusion that the filing of an information starts the speedy trial clock. But I disagree with the court’s conclusion that the superior court did not err in holding that the pretrial delay was Wright’s fault. I am persuaded that the superior court clearly erred in so holding. And while I recognize that this court owes no deference to the court of appeals’ decision in this matter, I believe that its opinion of the facts of the case and the impact those facts had upon the pretrial delay more accurately reflects what occurred. Not only did the State concede that “Wright was not hiding out, and the State had avenues of locating him that likely would have produced him within a brief period,”[1] but after leaving Alaska Wright made no attempt to hide his whereabouts or his identity; On the contrary, he remained in touch with his wife, the mother of the young girl he abused. He returned to Alaska and stayed at her home, he called her, and he sent and received mail from her. While the Palmer District Attorney’s office was working with the Alaska State Troopers to investigate his case, the Palmer Court presided over the dissolution of his marriage. In addition, the Juneau court sent him documents relating to a student loan matter. Wright also contacted the Alaska Department of Health and Social Services to obtain a death certificate.[2] A number of Alaska state agencies therefore had contact information for Wright while he was outside of the state. In addition, ‘Wright worked at a number of nuclear facilities that required security clearances. To obtain these clearances, [he] provided his name, address, date of birth, and social security number, along with copies of his drivers’s license ánd social security card.”[3] He made no attempt to conceal his identity. I agree with the court that Investigator Josten “did what any reasonable officer would do under the circumstances,”[4] But the superior court’s focus on the single investigator’s actions was misplaced. The Alaska State Troopers are a statewide agency, currently employing some 300 uniformed officers and 147 civilian employees.[5] There is no suggestion in the record that another officer was assigned after the first officer’s reassignment. The failure to assign another trooper to continue the investigation after Josten’s reassignment further demonstrates the State’s negligence in searching for Wright, particularly given the quantity and seriousness of the allegations against him. In addition, the Palmer District Attorney’s delay in charging Wright and its' or the troopers’ failure to obtain an extraditable warrant contribute to thé Sfáte’s responsibility for the pretrial delay. I would therefore conclude that the superi- or court erred in holding Wright responsible for the pre-arrest delay. But I agree with the court of appeals’ suggestion that the post-arrest delay is another matter altogether, and may well, demonstrate that he had no interest in a speedy trial. . I would decide this case as did the court of appeals, and reverse and remand it to the superior court for further findings. I therefore respectfully dissent from this portion of the court’s decision. Appendix EXCERPT OF ORDER RE MOTION TO DISMISS FOR PRETRIAL .DELAY * ⅜ ⅜ ⅜ .⅜ II. Discussion Wright has not made a showing of actual prejudice necessary to trigger the due process clause, • The due process clauses of the United States and Alaska Constitutions protect the accused against unreasonable pre-accusation delay.[17] The primary concern of the rule against pre-accusation delay is the impact of the delay on the accused’s ability to present a defense, not on the length of the delay itself.[18] To prevail on such a claim, the accused must establish both the absence of a valid reason for the delay, and that the delay caused actual prejudice to the defendant.[19] A showing of potential or possible prejudice will not suffice. In considering a claim of unreasonable delay, the court must strike a balance weighing the reasonableness of the justification for delay against the degree of prejudice to the defendant. The burden of proof is on the defendant to show the absence of a valid reason for the delay; however, once the issue is raised, the State has the burden of presenting sufficient reasons for such delay.[20] When sufficient reasons are advanced by the State, the defendant must show the State’s reasons do not justify the delay.[21] The defendant also has the burden to prove actual prejudice.[22] To establish actual prejudice, the defendant must present a “particularized showing that the unexcused delay was likely to have a specific and substantial adverse impact on the outcome of the ease.”[23] At the very least, the accused must show that, but for the delay, he would have been able to present favorable evidence. Mere speculation about the loss of favorable evidence is insufficient. Absent a showing of specific adverse impact stemming from the delay, the requirement of prejudice is not met, and the balancing procedure is simply not triggered, even if there is no reason advanced by the State for the delay.[24] In a recent decision, State v. Gonzales,[25] the Alaska Supreme Court reemphasized that the burden of proof rests with the defendant claiming unreasonable pre-indictment delay. In Gonzales, the defendant fled the state after being accused of sexually abusing the ten-year-old daughter of his girlfriend in 1992.. Gonzales resurfaced in Alaska ten years later, at which point Anchorage police resumed the investigation. Gonzales was arrested after a search of Gonzales’s home revealed thousands of images of child pornography.[26] Gonzales was then indicted on various counts of sexual abuse of a minor stemming from the 1992 allegations. Gonzales moved the superior court to dismiss the charges against him arguing unreasonable pre-indictment delay. The superior court granted the motion on the basis that the State failed to put forth any good reason for the delay.[27] The Court of Appeals affirmed the superior court finding that “the State presented no evidence justifying the delay.”[28] The Alaska Supreme Court reversed the decision of the two lower courts and remanded the case back to the superior court, concluding that the lower courts did not properly assign the burden of proof to the defendant.[29] In reaching this conclusion, the Supreme Court found that the lower courts erred in finding that the ten-year preindictment delay was unreasonable.[30] The Court held that “because the delay here was caused largely by the actions -of the defendant, the ten-year delay was nonetheless reasonable.”[31] The same holds true in Wright’s case. Wright voluntarily left the state once he realized he was under investigation for alleged sexual abuse of a minor. Wright moved from state to state and job to job until authorities found him in Minnesota. Wright was promptly extradited once located. The delay in indicting Wright was largely attributable to his flight from- the state and his frequent moves to different states to obtain employment. As such, the length of the delay is not unreasonable. Moreover, Wright has advanced no evidence of actual' prejudice caused by the State’s delay in arresting him and bringing him before the court.[32] Without meeting his burden of showing actual prejudice, Wright is not.entitled to relief under the due process clause. Wright is not entitled to relief under the speedy trial clause. The Sixth Amendment of the United States Constitution, as well as Art. I, section 11 of the Alaska Constitution, guarantee an accused the right to a speedy trial. Courts have identified three objectives of the speedy trial guarantee: (1) to prevent harming the defendant by a weakening of his case as evidence and memories grow stale with the passage of time; (2) to prevent prolonged pre-trial incarceration; and (3) to limit the infliction of anxiety upon the accused because of longstanding charges.[33] For this reason, a showing of actual prejudice is not a prerequisite to relief under, the speedy trial clause; a showing of possible prejudice may suffice.[34] To determine whether a defendant has been denied the right to speedy trial, courts must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) the prejudice to the defendant.[35] The accused must show that the length of the delay is presumptively prejudicial, or alternatively, that he was actually prejudiced to invoke the above test. When a delay is extensive, prejudice may be presumed. Alaska courts have considered a delay of over fourteen months presumptively prejudicial. The right to a speedy trial attaches when the defendant becomes formally accused.[36] In calculating the period of delay, any delay caused by the defendant is excluded.[37] The delay of five years in Wright’s case is of sufficient duration to be presumptively prejudicial; however, this delay does not invariably violate Wright’s right to speedy trial. Instead, prejudicial delay only triggers the four-part balancing test articulated in Mouser. - When using the balancing test, the court must determine precisely how heavily any lack of diligence should weigh against the state.[38] Deliberate attempts to delay trial in order to impede defense should weigh heavily against the State, while more neutral reasons, such as negligence, should be weighed less heavily. Valid reasons, such as missing witness[es], should serve to justify appropriate delay.[39] In the present case, it is clear that the five year delay, is presumptively prejudicial. .The court finds that part of the reáson for the delay is the State’s negligence in failing to issue an extraditable warrant for Wright’s arrest. Had such a warrant been issued, the State would likely have located Wright when he applied for work at the nuclear facilities in Arkansas in 2000 which required security clearance. But Wright’s departure from the state during the investigation, and after the warrant was issued for his arrest, made it impossible to comply with the right to speedy trial.[40] Wright had no less than sixteen different jobs in different states and locations during his absence. Between jobs he would be in Arkansas part of the time. With' a few exceptions, Wright generally stayed at one location for only a few months.[41] Due diligence only requires that the State make reasonable efforts to find a defendant whose whereabouts were unknown and bring him to trial.[42] The court finds Investigator Josten’s attempts to locate Wright throughout his absence from the State were reasonable. Wright’s argument that Josten could have located Wright by checking Palmer court records, Juneau court records, and Vital Statistics files places an unreasonable burden on law enforcement. By the time -an arrest warrant was issued for Wright in September 1999, Josten was off the case and assigned different duties, She did what any reasonable officer would do under the circumstances and that is to periodically check with various police sources to see if Wright had surfaced. A more thorough investigation of- a defendant’s whereabouts cannot be expected of a police officer no longer having responsibility for the case. Wright’s argument that Josten knew (or should have known) that Wright was at his brother’s residence shortly after he left Alaska also misses the mark. ‘Josten had no arrest warrant for Wright at the time, was not certain he was at his brother’s because of phone' calls to Evelyn‘from different numbers, and was declined an extraditable arrest warrant when she requested it. Contacting Wright at his brother’s without an extraditable warrant would have, only alerted Wright that police .were searching for him. Despite knowing of the investigation against him, Wright never asserted his right to speedy trial.- In Mauser, the Court of Appeals noted that the defendant presented no evidence indicating that he made • any effort to inquire into the status of his case during the period of delay, nor did he advance an explanation for the apparent lack of inquiry,[43] Here, it is equally clear that Wright did not-inquire into the status of his case at any time. While memories may have faded in Wright’s case, witness statements from the police investigation remain intact. Wright has not asserted that witnesses important to his defense cannot now be located or cannot now recall events. Wright has not been incarcerated during the delay in bringing him to trial. Balancing all these factors, the court concludes that Wright’s speedy trial rights have not been violated..; For the foregoing, reasons, Wright’s Motion to Dismiss is DENIED.[44] DATED at Anchorage, Alaska this 8th day of May, 2007. ' /s/PHILIP R.'VOLLAND Philip R. Volland, Superior Court Judge . Wright v. State, 347 P.3d 1000, 1008 (Alaska App. 2015). . Id. at 1004. . Id. . Opinion at 179 (quoting Appendix.at 7). . History of the Alaska State Troopers, Dep’t of Pub, Safety, Alaska State Troopers, http://dps. alaska.gov/ast/history.aspx (last visited June 6, 2017). This decision has been edited to conform to the technical rules of the Alaska Supreme Court, internal citations have been omitted, and typographical errors have been corrected. . State v. Mouser, 806 P.2d 330, 336 (Alaska App. 1991) (citing United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). . Id.; see also Smith v. State, No. A-6340, 1998 WL 191146, at *3 (Alaska App. Apr. 22, 1998). . Mouser, 806 P.2d at 336. . Id. (quoting Alexander v. State, 611 P.2d 469, 474 (Alaska 1980)). . Id. . Id. . Id. at 337. . Id. at 338. The Mouser court held that anxiety of the accused, and possible memory loss to the defendant and witnesses do not act as a showing of actual prejudice. . State v. Gonzales, 156 P.3d 407 (Alaska 2007). Gonzales’s departure and absence from the state is quite analogous to Wright's departure and absence in this case. . Id. at 410. . Id. . Id. (quoting State v. Gonzales, 121 P.3d 822, 826 (Alaska App. 2005)). . Id. at 411-12. . Id. at 412-14. . Id. at 414. . Wright’s assertion that he has lost the defense of "planted memory,” asserted for the first time in his post-hearing briefing, is purely speculative. The court sees no reason why that defense.cannot now still be asserted. . State v. Mouser, 806 P.2d 330, 338 (Alaska App. 1991) (citing Rutherford v. State, 486 P.2d 946, 947 (Alaska 1971)). . Id. (citing Moore v. Arizona, 414 U.S. 25, 26-27, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973)). . Smith v. State, No. A-6340, 1998 WL 191146, at *2 (Alaska App. Apr. 22, 1998) (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)); Mouser, 806 P.2d at 340. . Yarbor v. State, 546 P.2d 564, 567 (Alaska 1976). . Springer v. State, 666 P.2d 431, 435 (Alaska App. 1983). . Mouser, 806 P.2d at 341. . Id. . As mentioned, the defendant's canses for delay do not count towards determining speedy trial violation. . Wright worked at the Pine Bluff Arsenal nuclear facility for one year beginning in 1999, and at. the Sequoyah Nuclear Plant in Tennessee for eight months in 2003. Other than a six-month job ■ at Arkansas Nuclear One in Arkansas in 2000, Wright's periods of employment were brief. . Odekirk v. State, 648 P.2d 1039, 1043 (Alaska App. 1982). . Mouser, 806 P.2d at 342. . Wright's Motion to Dismiss the Special findings to the Indictment is DENIED AS MOOT in light of State v. Dague, 143 P.3d 988 (Alaska App. 2006).