James YORK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1871.

Court of Appeals of Alaska.

June 10, 1988.

---

John M. Murtagh and Walter Share, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

James York was convicted, following a jury trial, of two counts of perjury, resulting from testimony that he gave before the Alaska Workers' Compensation Board. On appeal, York raises a number of issues relating to his indictment. He also contends that the trial judge erred in giving supplemental instructions to the jury, that he received ineffective assistance of counsel, and that he was denied due process as a result of pre-indictment delay. We remand for further proceedings on York's claim of pre-indictment delay. As to all other issues, we affirm.

In the fall of 1979, York was employed as a cook on an oil platform in Cook Inlet. While working on the platform, York sustained a serious injury to his lower back. York applied for permanent total disability benefits, and had a hearing before the Alaska Workers' Compensation Board on September 14, 1983.

At the hearing, York was asked several questions about his ability to engage in physical activities. York apparently testified that he had difficulty bending from the waist and that he was not able to engage in sports. Following this testimony, a film made by an insurance company investigator was shown; it depicted York playing golf, carrying groceries, working on his car, and lifting ten-gallon cans of paint. The Board denied York permanent disability benefits.

Based on the statements he made at the hearing, York was indicted on five counts of perjury. At trial, York's primary defense was that, because he was taking so many different drugs for his various medical problems, he was unable to fully understand the questions posed to him. York also argued that he had physical limitations, but that he could still be active if he was under medication or used a pain blocking device.

We first address the issue of pre-indictment delay. York contends that the twenty-eight month delay in prosecuting him warrants dismissal of his case. The workers' compensation hearing was held on September 14, 1983. On July 3, 1984, the Department of Law was notified about the alleged perjury, and the matter was referred to the Office of Special Prosecutions and Appeals (OSPA) on November 28, 1984. OSPA did not obtain an indictment until six and one-half months later, on June 13, 1985. In December 1985, another six months later, York received notice of the charges. Thus, over twenty-two months passed from the date of the offense until the indictment, eleven months of which the case was under the control of the Department of Law.

In order to assess a claim of pre-indictment delay, courts must weigh the governmental interest in postponing accusation against the defendant's interest in early notice of the pending charges. The absence of a valid reason for the delay and the fact of prejudice must be established for the defendant to prevail. *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972). The two factors relevant in considering pre-indictment delay are (1) the reasonableness of the delay, and (2) the resulting harm to the accused:

The burden of proof is on the defendant to show the absence of a valid reason for the delay and the fact of prejudice, though the state has the burden, once the issue is raised, to come forward with reasons for the delay. When reasons are advanced, the defendant must show that they do not justify the delay.

*Alexander v. State*, 611 P.2d 469, 474 (Alaska 1980) (footnote omitted). *See also Burke v. State*, 624 P.2d 1240, 1242–43 (Alaska 1980); *Coffey v. State*, 585 P.2d 514, 520 n. 19 (Alaska 1978); *Wilson v. State*, 756 P.2d 307 (Alaska App.1988).

We find the record before us insufficient to resolve the issue of pre-indictment delay, in that neither party made a satisfactory showing below to meet its respective burden. At the omnibus hearing, York made a cursory attempt to argue that he was prejudiced by the delay, contending that he did not keep any records concerning his pain and suffering or the medication he was taking during the twenty-two-month period, and that because of the delay it would be difficult to locate witnesses and to ensure that they would have accurate recollection of the events at issue. In our recent decision in *Wilson*, we emphasized that the defendant must show actual and substantial prejudice. Based only on the oral representations of York's counsel, it does not appear that York would be able to carry his burden of proving prejudice. We note, however, at the hearing both parties and the court initially agreed that York would be allowed to submit an affidavit detailing how he was prejudiced. This affidavit was to be submitted within twenty-four hours of the hearing. By the end of the hearing, the court apparently decided that the affidavit would only be necessary if the court found that the delay was unreasonable. The court then issued an order that was based exclusively on the reasonableness of the delay and did not address the issue of prejudice:

> There's no indication that this case was delayed for tactical purposes for I'm able to find that the time expended was necessary for a careful investigation, to make certain that Mr. York's rights were fully protected. The motion to dismiss for the [pre-] indictment delay is denied and this court did not have to address the issue of prejudice.

■ Based on the state's arguments at the hearing, however, we find inadequate information to establish the reasonableness of the delay. The state advanced the conclusory argument, unsubstantiated by any evidence or specific information, that the entire period of pre-indictment delay was routine and that the eleven-month period between the referral to the Department of Law and the issuance of the indictment was necessary to carry out a thorough investigation. Without a more detailed showing, however, the explanation appears to be inadequate. The state's case at trial consisted almost exclusively of York's statements before the Board, coupled with the insurance company film and foundational evidence necessary to establish its authenticity. This was virtually the same evidence heard by the Worker's Compensation Board two years earlier.

From the record before us, we find that neither party sufficiently established its burden of proof. A comparable situation was addressed by the Alaska Supreme Court in *Alexander*, 611 P.2d at 473–75. The court directed a remand on the following terms:

> Alexander shall be given the opportunity to present evidence of prejudice to his defense, and the state may present evidence to justify the delay. Then, the court must strike a balance weighing the reasonableness of the justification against the degree of prejudice to the defendant to determine if the motion to dismiss for preindictment delay should be granted.

*Id.* at 475. We conclude that a similar remand is necessary in the present case.

For purposes of judicial economy, we will proceed to consider the other issues raised by York. *See id.* York raises several issues concerning his indictment. First, he argues that there was insufficient evidence of perjury to support Count III of the indictment. Count III charged:

7. That on or about the 14th of September, 1983, at or near Anchorage, ... while testifying in a formal hearing before the Alaska Workers Compensation Board ..., James York did knowingly make a false sworn statement as follows:

MS. WILCOX: How about bending and stooping? Is bending a problem?

MR. YORK: Yes.

MS. WILCOX: We're talking again about bending over from the waist?

MR. YORK: I don't bend over from the waist. I–I–I've learned to bend with my knees, bending down. When I bend over from the waist I get that pain and I know it.

8. That the statement set out in paragraph 7 was false in that James York did bend over from the waist at the time he gave this testimony.

9. That James York did not believe his statement set out in paragraph 7 was true at the time he made it.

York contends he never clearly asserted that he could not bend over, that his statements constituted the defense of retraction as a matter of law, that the wording of the indictment was misleading because no evidence in front of the grand jury indicated that York could bend over at the time of the hearing, and that the jury instructions on Count III failed to require the element of "sworn" testimony as required by statute.

■ The test for the sufficiency of an indictment is whether the evidence presented to the grand jury, if unexplained or uncontradicted, would warrant a conviction. *Lupro v. State*, 603 P.2d 468, 473 (Alaska 1979); *State v. Parks*, 437 P.2d 642, 644 (Alaska 1968). Inferences drawn from the evidence must be made in favor of indictment. *State v. Ison*, 744 P.2d 416, 418 (Alaska App.1987).

■ We believe that a reasonable person listening to York's testimony would be persuaded that York denied bending from the waist when, in fact, he could do so, as evidenced by the film of him playing golf, carrying groceries, and working on his car. It was for the grand jury to determine the precise meaning York intended to convey by his choice of wording. A common sense interpretation of York's testimony that is the basis of Count III indicates that York was physically able to bend from the waist, but because of the pain such movement caused, he avoided bending. We cannot agree that York never asserted that he could not bend over.

Nor do we find that York's statements established the defense of retraction as a matter of law. Retraction is an affirmative defense set forth in AS 11.56.235(a), and requires that the defendant expressly retract the statement during the course of the proceeding before the defendant becomes aware of the discovery of falsification and before the state relies on the false statement. A reasonable interpretation of the testimony does not support a finding that York made an express retraction. Rather, a reasonable juror could properly find that York was merely qualifying and explaining his prior statement that he did not bend.

York next contends that there was insufficient evidence to support Count V of the indictment. Count V provides:

13. That on or about the 14th day of September, 1983 ..., in a formal hearing before the Alaska Workers Compensation Board ..., James York did knowingly make a false sworn statement as follows:

MS. WILCOX: Are you able to engage in any sports activities?

MR. YORK: Sports?

MS. WILCOX: Bowling, fishing, golf.

MR. YORK: No, ma'am.

MS. WILCOX: No?

MR. YORK: No.

14. The statement set out in paragraph 13 was false in that James York was able, at the time he gave this testimony, to engage in sports and specifically, golf.

15. That James York did not believe his statement set out in paragraph 13 was true at the time he made it.

York's arguments are much the same as for Count III: that he did not specifically

assert that he was unable to play golf, and that even if his response was regarded as an assertion, it was not perjurious because York could not have been engaging in sports "at the time of the hearing."

    ■ Again, it was for the grand jury to determine how literally York meant his words to be taken. A plain reading of the testimony indicates that York stated that he could not participate in the sports of bowling, fishing, or golf. Count V charges that York did not believe the statement to be true "at the time of the hearing," but it strains credulity to suggest that the only reasonable interpretation of York's testimony is that his statement, and his own perception of its truthfulness, were limited to the precise moment at which York testified. A reasonable juror could conclude that York represented to the Board that he did not engage in sports, that this assertion was false because the film and other evidence showed him playing golf, and that York knew it to be false. Sufficient evidence was presented to support the indictment on Count V.

    ■ York also attacks Count III on the basis that the wording of the indictment was either vague or duplicitous because it was impossible to decide which of the four statements set out therein formed the basis of his indictment. He relies on *Covington v. State*, 703 P.2d 436 (Alaska App.1985) (*Covington I*), for the proposition that the vagueness of the indictment denied him due process and mandated dismissal. *See also* Alaska R.Crim.P. 7(c). We agree with the state that the fact that a perjury count contains several statements, rather than a single answer, does not indicate that the count charges more than one offense, and consequently, that Count III does not charge him with perjury based on multiple acts. Further, there was no fatal variance involved. Variance occurs when a defendant is convicted based on different conduct than charged in the indictment. This was not true in York's case. Convictions are generally sustained as long as the proof upon which they are based corresponds to an offense clearly set out in the indictment.

*United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).

    Moreover, a violation of Rule 7(c) does not require reversal of the subsequent conviction unless the defendant shows prejudice. *See McGahan v. State*, 606 P.2d 396, 397 (Alaska 1980). *See also Miller*, 471 U.S. at 134–35, 105 S.Ct. at 1814. York does not indicate how any alleged variance prejudiced him in terms of how he could have changed his trial tactics, called additional witnesses, or presented different evidence. Because there was no showing of actual prejudice to York, we see no reason to reverse York's conviction on this issue.

    ■ York next argues that the indictment should have been dismissed because the prosecutor failed to present exculpatory evidence in the form of medical records relating to York's back injury. We are not persuaded by York's argument. While a prosecutor has a duty to present exculpatory evidence to the grand jury, the prosecutor does not have to develop evidence nor present every lead possibly favorable to the defendant. *Frink v. State*, 597 P.2d 154, 164–66 (Alaska 1970). The prosecutor is obligated only to present evidence known to the prosecutor which in and of itself tends to negate guilt. *Wilkie v. State*, 715 P.2d 1199, 1201 (Alaska App.1986). The medical evidence, which was later produced at York's trial, was not exculpatory since it did not, standing alone, tend to negate York's guilt in committing perjury. The prosecutor was therefore not obligated to produce this evidence at the grand jury proceedings.

    York raises several issues relating to his trial. First, York challenges the sufficiency of the evidence at trial on grounds identical to those raised in support of his challenge to the sufficiency of the evidence before the grand jury. We conclude, however, that reasonable jurors, viewing the evidence and the inferences arising therefrom in the light most favorable to the state, could properly have concluded that York's guilt was established beyond a reasonable doubt.

    York alternatively argues, as to Count III, that the trial court erred in failing to

instruct the jury that it had to find that York's statement was "sworn." York devotes only a portion of a single paragraph to this argument and cites no authority in support of it. Given his failure to provide adequate briefing, the issue may be deemed abandoned. *Kristich v. State*, 550 P.2d 796, 804 (Alaska 1976).

In any event, we are unpersuaded by York's argument that the absence of the phrase "sworn testimony" in the jury instructions on Count III could have prejudiced his case. The omission of the word "sworn" from the instruction on Count III cannot fairly be said to have affected the jury's verdict, since the instruction for Count I properly included the term and accurately reflected the statutory definition of perjury. Further, when the trial judge read the instructions to the jury he defined "sworn statement," and he reiterated that element later in his supplemental instruction to the jury. Similarly, although the language "at the time he gave this testimony" is arguably misleading, we do not believe that the jury would have been confused by this statement. There was, therefore, sufficient evidence of perjury to support Count III of the indictment.

York next contends that the trial judge gave erroneous supplemental instructions to the jury. During deliberations, the jury sent the trial judge a note expressing its confusion as to whether it had to find each statement within a count to be perjurious in order to convict. In response, the trial judge instructed the jury:

> The crime of perjury is as set out in instruction #12. Not every part of the statements in each count of the indictment must be proven to be false in order to constitute the crime of perjury.
>
> . . . .
>
> The focus of count III of the indictment is as stated in paragraph 8 of the indictment namely the allegation that defendant asserted that he was unable to bend over from the waist.
>
> The elements of the offense of perjury, that the sworn statement was knowingly false and that the defendant did not believe it to be true must be proven beyond

a reasonable doubt as to these allegations.

While it is true that York did not literally say that he was "unable" to bend from the waist, we do not find that the instruction significantly altered the conduct that the jury had to find as a necessary element of the offense. Moreover, the judge's comments may be read as consistent with the wording of the indictment, since he stated that the "focus" was the same as in paragraph 8 of the indictment and merely gave a further explanation that the allegation was that the defendant asserted he was unable to bend from the waist. Thus, the challenged instruction left to the jury the task of determining whether York did in fact say that he was "unable" to bend.

Next, York contends that his trial counsel was ineffective because she failed to request a bill of particulars, failed to move for dismissal of the indictment based on vagueness or variance, failed to argue insufficiency of the evidence, failed to ensure that the jury was instructed on the elements of "sworn" testimony, never argued retraction, and failed to present York's exculpatory statement made at the workers' compensation hearing that he had not heard the word "golf."

In his motion for new trial, York claimed that he had been denied effective assistance of counsel in only three respects: failure to move for a bill of particulars as to Count III, failure to present the defense of retraction, and failure to present York's allegedly exculpatory statement. While we may review on appeal these three claims, we can review the other three issues for plain error. *Barry v. State*, 675 P.2d 1292, 1296 (Alaska App.1984).

Under *Risher v. State*, 523 P.2d 421 (Alaska 1974), to succeed on an ineffectiveness claim, a defendant must show that counsel's conduct was deficient and that the lack of competence contributed to the conviction. York first claims that his counsel's failure to move for a bill of particulars resulted in his inability to prepare for trial. York does not state how he was unable to prepare a defense or claim that he was

surprised at trial as a result of not having a bill of particulars. He has not shown how he may have been prejudiced. *Lupro,* 603 P.2d at 472. *See also Covington I,* 703 P.2d at 439. The trial court correctly found that York failed to show even a reasonable possibility that the court would have granted a motion for a bill of particulars.

 York further contends that his trial counsel never argued retraction and that it was unclear that she knew that it was an affirmative defense defined by statute. As we have previously noted, York's statement, "when I bend over from the waist I get that pain and I know it" is hardly an express retraction of his statement "I don't bend from the waist," but is rather a qualification or explanation. Further, the jury had before it both of these statements and apparently did not interpret the qualifying statement as significantly affecting his prior statement that he did not bend from the waist.

 York's last claim is that his trial counsel was ineffective for failing to present his statement at the hearing that he was not certain he had heard the word "golf." York contends that the following exchange reflects his misunderstanding:

Q. Mr. York, was that man in the film you?

YORK: It sure was.

Q. Did you not earlier testify that you were unable to play golf?

YORK: Well, I don't remember if I specifically said that, but I said I wasn't able to do a lot of thing. [sic] That—But I don't remember sayin' that, but I probably did. I don't know.

Q. I believe I asked you specifically if you engaged in any sports activities— [both talking at once]—

YORK: I remember you said somethin' about fishin'.

Q. Bowling, fishing or golf, and you answered no.

YORK: (Indiscernible).

The trial court correctly concluded that this colloquy is not exculpatory and, in fact, could reasonably be viewed as evasive.

Consequently, the failure to present the statements would not fall below the minimum standard of competency.

The trial judge correctly concluded that York did not receive ineffective assistance based on any of these issues.

The judgment of the lower court is AFFIRMED in part and REMANDED in part for further proceedings.