Carl M. BREWER, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8029.

Court of Appeals of Alaska.

Sept. 27, 2002.

Jody Patrick Brion, Anchorage, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Carl M. Brewer appeals the superior court's decision to revoke his probation. Brewer's main contention is that the superior court improperly denied his request to represent himself at the revocation hearing and forced him to proceed with a public defender whom he did not want and who was unprepared to defend him. But Superior Court Judge Donald D. Hopwood concluded that Brewer's eleventh-hour request for self-representation was a sham, a tactic aimed at delaying the adjudication.

In *Gottschalk v. State*[1], the Alaska Supreme Court ruled that a trial judge can deny a last-minute request for counsel from a

1. 602 P.2d 448, 450–51 (Alaska 1979).

defendant who previously announced that he would defend himself, if the lack of counsel can be attributed to the defendant's own lack of diligence and failure to prepare for trial. We conclude that Brewer's case presents the reverse side of the same coin: Brewer, who was represented by counsel, did not assert his right to self-representation until the last minute. Moreover, Brewer told the trial judge that, if he was allowed to represent himself, he was not prepared to go forward with the hearing and he would need a substantial continuance. Under these circumstances, Judge Hopwood could properly deny Brewer's request for self-representation and make Brewer proceed with the revocation hearing.

### Underlying facts

In early 1995, Carl M. Brewer was convicted of misdemeanor stalking, misdemeanor assault, and felony weapons misconduct. He served a prison sentence and then, on March 19, 1996, he was released on probation. Brewer was allowed to move to Texas, where the Texas correctional authorities supervised him.

On March 22, 1999, the Texas authorities terminated their supervision of Brewer. According to Brewer, his Texas probation officer told him that his probation was over—that he was completely free. Because the Texas authorities were no longer supervising Brewer, the Alaska authorities lost track of him. But according to Brewer's criminal judgement, he was to remain on probation for another two years—until mid 2001.

Brewer moved back to Alaska. The Alaska Department of Corrections found out that he was here, and in early 2001 the Department petitioned the superior court to revoke Brewer's probation. For purposes of this appeal, the Department's allegations fall into two groups—three allegations of misconduct in 1996, and a fourth allegation of misconduct in 2000.

In the first group of charges, the Department alleged that Brewer had committed three violations of the conditions of his probation in 1996 (*i.e.*, while Brewer was living in Texas and was being supervised by the Texas authorities)—by committing a new crime (driving while intoxicated), by consuming alcoholic beverages, and by using marijuana.

In addition, the Department alleged that Brewer had violated the conditions of his probation in 2000 (*i.e.*, after the Texas authorities had ended their supervision of Brewer)—by leaving Texas without first obtaining permission from an Alaska probation officer.

(The Department also brought a fifth charge against Brewer—an allegation that in 2000, while Brewer was living in Texas, he resisted police officers who had arrested him for public intoxication. At the conclusion of the revocation hearing, Judge Hopwood concluded that the State had failed to prove this charge. This fifth charge is not at issue in this appeal.)

Brewer conceded the first group of charges—the charges based on his conduct in 1996. However, Brewer asserted that his probation should not be revoked for failing to report his change of residence in 2000. As explained above, Brewer claimed that when the Texas authorities ended their supervision of him in March 1999, they told him that he was no longer on probation. Brewer therefore claimed that he reasonably believed that he was no longer obliged to report his whereabouts to the Alaska authorities.

As described more fully in the next section of this opinion, Brewer asked Judge Hopwood to delay the adjudication hearing so that he could obtain documentary evidence from Texas that would corroborate his claim that the Texas authorities had told him that he was being released from all supervision. Judge Hopwood refused to continue the hearing. However, Brewer took the stand at the hearing and testified that the Texas authorities had told him that he was no longer on probation. Based on Brewer's testimony, and based on the fact that the Alaska Department of Corrections never assigned a probation officer to supervise Brewer after the Texas authorities notified the Department that they were no longer going to supervise Brewer, Judge Hopwood concluded that Brewer had reasonably believed that he was no longer obliged to comply with the

reporting requirements of his probation. Accordingly, Judge Hopwood ruled that the State had failed to prove the allegation that Brewer had knowingly failed to obtain the Department's permission before leaving Texas.

Thus, when Judge Hopwood revoked Brewer's probation, he did so solely on the basis of the three violations from 1996 that Brewer expressly conceded.

### Brewer's request to represent himself

On February 15, 2001, Brewer was arraigned in superior court on the petition to revoke his probation. He told Judge Hopwood that he wanted an attorney but could not afford one. Brewer had had a previous experience with the Public Defender Agency—an experience which, in his words, "didn't pan out too good". Nevertheless, Brewer did not protest when Judge Hopwood appointed the Public Defender Agency to represent him in this litigation. Judge Hopwood directed Brewer to contact the Public Defender as soon as possible, and he calendared the revocation hearing for the week of April 9, 2001.

For reasons that are not explained in the record, Brewer's revocation hearing was continued until April 19th. When the parties assembled in court on the 19th, the assistant public defender who was representing Brewer told Judge Hopwood that there was a "preliminary matter" to discuss:

> *Defense Attorney:* I met with Mr. Brewer earlier today. It appears that he wishes to represent himself and to not have me involved with [his] case.... I'd like the court to inquire of Mr. Brewer whether he wishes to have me continue ... as counsel....

> *The Court:* Okay. Mr. Brewer, what about this [matter] of having the PD withdraw? [Are] you going to represent yourself if they do that?

> *Brewer:* Yes, sir. I don't see no other choice in this matter.... Your Honor, [I] stopped by Mr. Ketscher's office 30 minutes ago to see what he had [prepared] on my defense, and—

> To start with, I apologize for [the fact that] I'm not very coherent. I've been 28 hours without any sleep. I just got done with a halibut opening, and I was called on the boat Tuesday [*i.e.,* two days ago] to remind me of [this] court date. And I asked my girlfriend to call in for a continuance, and [Mr. Ketscher] said that [that] was an impossible thing right now, that I need to be here, and that—because, I guess, you [are]n't very sympathetic to working fishermen. And the boat dropped me off at the dock at five o'clock this morning ... and I lost half a crew share.... I don't have the money to buy a lawyer now, after losing that money, and I just want ...

> *The Court:* So far, Mr. Brewer, [Mr. Ketscher] has given you good advice.... You need the Public Defender since you can't hire [a private attorney], right?

> *Brewer:* Well, I feel as if I can represent myself as well as I've been represented so far. I just ... walked from his office to here and got as much information as he's got in his file [concerning] my defense.... I feel as if I can get just as much if you could give me some time to make some phone calls—30 more phone calls, maybe—and to see if I can get the documentation necessary to prove to you that I was released down in Texas [from all] parole and probation.... [Nobody has] contacted [the people who supervised] me down there—my probation officer, the probation department, interstate compact. He has one document that will convict me [*sic*] of ... this probation violation thing.

At this point, Judge Hopwood interrupted Brewer. The judge announced that he was not willing to delay the revocation hearing again. And, because Brewer had said that he was not prepared to go forward with the hearing, Judge Hopwood told Brewer that he was not inclined to grant Brewer's last-minute request for self-representation:

> *The Court:* This [hearing was] scheduled back [at] the arraignment on February 15th. I [have] granted one continuance already. I'm not granting another one. We're doing it today....

[You are] constantly shifting around with lawyers. Any [change of lawyers] can be a way for people to manipulate the system and buy more time.... You just told me [that] you're not ready [to represent] yourself [in this] adjudication because one, you're tired, and two, you haven't done anything ... to prepare any defense on your own. So I don't see how you can possibly represent yourself today.

*Brewer:* Well, I'm not asking to represent myself today, Your Honor. I'm asking for some time to prepare some kind of defense for myself. Only thing we have here is something that will [be] a sure conviction.... Nobody [has] been contacted; nothing's been done in my defense.... There's absolutely no documentation from Texas that I was released [from supervision].... [I'll] borrow money and fly down there ... myself ... if you'll grant me a continu[ance].

After hearing Brewer's request, Judge Hopwood asked the defense attorney to give him some background information. The defense attorney told the judge that he had met with Brewer five times since the Public Defender Agency was appointed at the February 15th arraignment. Brewer never mentioned the possibility of representing himself until a conversation on April 9th (*i.e.,* ten days before the present hearing). Even then, Brewer did not make a firm decision on this matter. Two days before the hearing, Brewer's girlfriend called the secretary at the Public Defender Agency to say that Brewer was still thinking about whether to represent himself. But it wasn't until the day of the revocation hearing that Brewer finally told his attorney that he wished to represent himself.

After hearing this, Judge Hopwood denied Brewer's request to represent himself:

*The Court:* I see this as a manipulation of the system[.] ... [This] adjudication

hearing [was] set two months ago, [and] this is the first time [that] Mr. Brewer raises the issue. And [there is a] limitation on a [party's right to request] more time to change ... how his representation will [be handled].... I'm just not inclined to do it. I see it as manipulation. I'm going to deny [it]. The PD is still in [this case], and I'm going to take evidence today.

On appeal, Brewer argues that Judge Hopwood abridged his constitutional right to defend himself. Brewer relies on U.S. Supreme Court and Alaska cases which recognize a defendant's right to self-representation [2] and which declare that a court has very limited authority to deny a defendant's request for self-representation—in general, only if the defendant has not knowingly and intelligently waived the right to counsel, or if the defendant is incapable of presenting a rational and coherent case.[3] Brewer points out that Judge Hopwood never questioned whether Brewer was knowingly and intelligently waiving his right to counsel, nor did Judge Hopwood ever question Brewer's ability to present a rational and coherent case.

But Brewer's discussion of this issue does not address the basis of Judge Hopwood's ruling. Judge Hopwood's decision had nothing to do with the voluntariness of Brewer's waiver of counsel or Brewer's intellectual or emotional ability to present a defense on his own. Instead, Judge Hopwood ruled that Brewer was not entitled to make a last-minute decision to discharge the Public Defender Agency and represent himself when self-representation would inevitably mean a delay of the proceedings and when this delay was attributable to Brewer's own lack of diligence in pursuing this matter.

The Alaska Supreme Court faced an analogous situation in *Gottschalk v. State,* 602 P.2d 448 (Alaska 1979). The defendant in *Gottschalk* was tried twice for larceny. (His first

**2.** *See Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975); *McCracken v. State,* 518 P.2d 85, 89, 91 (Alaska 1974).

**3.** *See, e.g., Annas v. State,* 726 P.2d 552 (Alaska 1986) (requiring a knowing and intelligent waiver of the right to counsel); *Adams v. State,* 829

P.2d 1201, 1206 (Alaska 1992) (declaring that a knowing and intelligent decision to waive counsel and represent oneself can be denied only "in the fairly rare circumstances in which the defendant is unable to present a rational and coherent defense").

trial ended in a hung jury.[4]) Gottschalk represented himself at his first trial[5], and he apparently was going to represent himself at his second trial. But then, on the first day of the renewed trial, Gottschalk announced his decision to hire an attorney. Gottschalk asked the trial judge to delay the trial for four days so that the new attorney could prepare the case, but the trial judge refused.[6] The judge offered to allow Gottschalk's attorney to enter the case in mid-trial and take it to completion, but the newly-hired attorney told the judge that he could not ethically enter the case unless the trial was delayed (so that he would have time to properly prepare). Hearing this, the judge again refused to stop the trial, and Gottschalk was ultimately convicted.[7]

On appeal, Gottschalk argued that the trial judge had unlawfully abridged his right to counsel, but the supreme court disagreed. The court acknowledged that, several times in the past, it had reversed criminal convictions when a trial judge refused to grant a defense attorney's request for more time to prepare for trial. But the court concluded that Gottschalk's case was different because those prior cases "involv[ed] circumstances beyond the control of the requesting party".[8] The court declared that Gottschalk's case was governed by a different rule:

> [When] a defendant is financially able to engage an attorney, he may not use his neglect in hiring one as a legitimate reason for delay. *United States v. Yamashita*, 527 F.2d 954, 955 (9th Cir.1975); *United States v. McMann*, 386 F.2d 611, 618 (2nd Cir.1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1045, 19 L.Ed.2d 1153 (1968); *Relerford v. United States*, 309 F.2d 706, 708 (9th Cir.1962).

> We acknowledge that a continuance of several hours or one day may have been reasonable in this case. However, we cannot say that the trial court's denial constituted an abuse of discretion. Any delay would have seriously inconvenienced the court, an Anchorage judge temporarily sit-

ting in Naknek, the prosecutor, and at least one witness who traveled from Dillingham. "While blind adherence to the requirements of court calendaring should never be used as an excuse to deny one accused of a serious crime the fundamental right to organize his defense, there is a compelling public interest in the prompt and orderly disposition of such matters." *Green v. State*, 544 P.2d 1018, 1023 (Alaska 1976) (footnote omitted).

> We conclude that the seven months between Gottschalk's first and second trials afforded him more than a reasonable time to engage an attorney. As he made no effort to retain counsel during those months, Gottschalk's failure can only be attributed to his lack of diligence. Under the circumstances, we must hold that the trial court acted within its discretion in denying appellant's requests for trial continuances.

*Gottschalk*, 602 P.2d at 451.

■ Brewer's case is the flip-side of *Gottschalk*: Brewer is a defendant who obtained an attorney at his arraignment and then, on the day scheduled for his hearing, announced his desire to represent himself— but only if the trial judge granted him a continuance. We conclude that the same rule applies: a trial judge may deny a defendant's last-minute request for self-representation when granting the request would necessarily delay the trial and the tardiness of the request is due to the defendant's lack of diligence in pursuing the issue of self-representation.

Although this precise issue has never before been decided in Alaska, we note that other jurisdictions have upheld a trial judge's authority to deny a defendant's last-minute request for self-representation under similar circumstances.

For instance, in *United States ex rel. Mal-*

---

4. *See id.* at 449.

5. *Id.* at 449 & n. 2.

6. *Id.* at 450.

7. *Id.* at 450.

8. *Id.* at 450.

*donado v. Denno*[9], the Second Circuit confronted a situation where, on the first day of trial, before jury selection, the defendant asked the trial judge to allow him to discharge his attorney and represent himself.[10] The trial judge refused, and the Second Circuit upheld the trial judge's ruling. The Second Circuit recognized that a defendant's request for self-representation should normally be granted if made before trial, but

> [o]nce the trial has begun with the defendant represented by counsel, ... [the defendant's] right ... to discharge his lawyer and to represent himself is sharply curtailed. There must be a showing [of a] prejudice to the legitimate interests of the defendant [that] overbalances the potential disruption of proceedings already in progress, with considerable weight given to the trial judge's assessment of this balance.

*Denno*, 348 F.2d at 15. Other court decisions since *Denno* have echoed this rule.[11]

In Brewer's case, Judge Hopwood denied Brewer's last-minute request for self-representation expressly because granting the request would require a delay of the revocation hearing. Moreover, Brewer's sole claim of prejudice to his interests was that his public defender had failed to obtain documentary evidence from Texas that would corroborate Brewer's testimony about what the Texas probation authorities had told him (*i.e.*, that he was released from all supervision in March 1999). But, as explained above, Judge Hopwood ultimately accepted the truth of Brewer's testimony on this point even though Brewer had no corroborating documents. The judge ruled in Brewer's favor on the allegation that Brewer had knowingly failed to notify the Alaska authorities before leaving Texas. Brewer's probation was revoked solely on the basis of the

three allegations of misconduct from 1996 that Brewer conceded—driving while intoxicated, consuming alcohol, and using marijuana.

Thus, Judge Hopwood had a valid reason for refusing to grant Brewer's eleventh-hour request to represent himself and, in addition, Brewer can not show that he was prejudiced by that ruling.[12] Accordingly, we hold that Judge Hopwood did not unlawfully abridge Brewer's right of self-representation.

Brewer argues in the alternative that Judge Hopwood's refusal to grant him a continuance constituted an improper infringement of Brewer's right to prepare his defense (in particular, to gather potentially exculpatory documentary evidence from Texas). We reject this characterization of Judge Hopwood's ruling for the same reasons.

*Brewer's argument that the State should be estopped from seeking to revoke his probation based on misconduct that he committed five years earlier*

■ Brewer argues that the State of Alaska should have been estopped from petitioning the superior court to revoke Brewer's probation in May 2001 when the petition was based on misconduct that Brewer committed in 1996, almost five years before.

Citing our decision in *State v. Mouser*[13], Brewer argues that probation revocation proceedings should be governed by the same due process considerations that require a speedy indictment on criminal charges. Quoting *Mouser*, Brewer contends that we should adopt a "speedy petition" rule to protect probationers from "the infliction of anxiety ... because of longstanding charges" and to prevent "weakening of [a probationer's]

---

9. 348 F.2d 12 (2nd Cir.1965).

10. *See id.* at 14.

11. *See Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990); *Vanisi v. State*, 117 Nev. 330, 22 P.3d 1164, 1170–71 (2001); *Clearwater v. State*, 2 P.3d 548, 554 (Wyo.2000); *People v. Windham*, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, 1192 (1977); *Schnepp v. State*, 92 Nev. 557, 554 P.2d 1122, 1124 (1976).

12. *Compare Boggess v. State*, 783 P.2d 1173, 1182 (Alaska App.1989) (upholding a trial judge's refusal to grant a continuance so that the defendant could switch attorneys, when "the only reason a continuance was needed was [the defendant's] own lack of diligence in substituting a new attorney" and when the defendant failed to establish that he was prejudiced by the trial judge's refusal to give him extra time).

13. 806 P.2d 330 (Alaska App.1991).

case as evidence in the memories of witnesses grow stale with the passage of time".[14]

We reject Brewer's argument for two reasons.

First, Brewer never raised this contention in the superior court. Instead, Brewer conceded that the superior court could properly revoke his probation for the three acts of misconduct that he committed in 1996.

Second, Brewer's argument is moot. Even if we were to recognize a probationer's right to a "speedy revocation petition", similar to a criminal defendant's due process right to a speedy indictment, Brewer would not be entitled to relief.

As we discussed in *Mouser*, a defendant who claims that they were denied a speedy indictment must prove two things: the absence of a valid reason for the delay, and resulting prejudice.[15] Here, Brewer made a credible showing that there was no good reason for the State of Alaska's long delay in petitioning the superior court to revoke Brewer's probation based on misconduct that he committed in 1996. But Brewer made absolutely no showing that he was prejudiced by this delay. In fact, Brewer conceded that he had committed the three violations of his probation—driving while intoxicated, consuming alcohol, and using marijuana.

For all of these reasons, we reject Brewer's argument that the State was estopped from seeking to revoke his probation based on his 1996 misconduct.

## Conclusion

The judgement of the superior court is AFFIRMED.

---

14. *Id.* at 338, quoting *Rutherford v. State*, 486 P.2d 946, 947 (Alaska 1971).

15. *Mouser*, 806 P.2d at 336, citing *York v. State*, 757 P.2d 68, 71 (Alaska App.1988).