James C. YARBOR, Appellant,

v.

STATE of Alaska, Appellee.

No. 2397.

Supreme Court of Alaska.

Feb. 23, 1976.

H. John DeNault, III, of Rice, Hoppner & Hedland, Fairbanks, for appellant.

Harry L. Davis, Acting Dist. Atty., Patrick J. Gullufsen, Asst. Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

CONNOR, Justice.

This appeal constitutes a challenge to a criminal conviction on the ground that there was delay in initiating formal proceedings against the defendant.

James Yarbor was indicted and subsequently convicted for the offense of lewd and lascivious acts toward a child.[1] Prior to trial Yarbor moved to dismiss the indictment against him because of prejudicial delay in commencing prosecution. The motion was denied. From that ruling Yarbor appeals.

The events giving rise to the indictment occurred on August 11, 1973. Yarbor took J. E., then ten years old, and his seven-year-old daughter to his place of employment, which was unoccupied at the time. After directing his daughter to wait, Yarbor took J. E. outside to a pickup truck. There, despite J. E.'s resistance, Yarbor unfastened her trousers, attempted to touch her vaginal area, and attempted to induce her into sexual intercourse by promising her money and a cap gun.

The incident was first reported to the Fairbanks Police Department on the following Tuesday, August 14, 1973. Yarbor was questioned two days later,[2] after being given a *Miranda* warning. The police investigation of the incident was completed on August 21, and the case was reviewed by at least three members of the District Attorney's Office between August and December of 1973. In December a formal complaint was prepared for J. E.'s mother to sign. J. E.'s mother was notified "several times a month thereafter" that the complaint was ready for her signature.

---

1. Prohibited by AS 11.15.134.

2. The testimony of J. E.'s mother before the Grand Jury indicates that she did not call the police until Thursday, August 16, and that Yarbor was not questioned until Friday, August 17. But Officer Strickfaden testified that he interviewed Yarbor on August 16.

She finally signed it on March 4, 1974, and Yarbor was served two days later.

Yarbor first contends that this delay resulted in a denial of his constitutional right to a speedy trial.[3] We disagree.

The United States Supreme Court has held that the federal[4] right to a speedy trial does not attach until a defendant has been formally accused. In *United States v. Marion*, 404 U.S. 307, 321–22, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (1971), the court observed:

> "Invocation of the speedy trial provision . . . need not await indictment, information or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusations: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case."

Yarbor would have us interpret the Alaska Constitution as providing a right to a speedy trial that would attach when the state has acquired sufficient evidence to charge an individual with a crime. The difficulties in administering such a test are manifest. An enormous burden would be placed upon the district attorney's office. Moreover, such a test would have an adverse impact on defendants. They have much to lose by a rule which would prompt district attorneys to initiate prosecutions without waiting for more than the minimum evidence to establish probable cause —a quantum of evidence which falls far short of the amount necessary to support a criminal conviction. Exculpatory evidence often follows closely in the footsteps of incriminating evidence. Moreover, it is foreseeable that prosecuting attorneys, in their haste to file charges upon determining that probable cause exists, would act on cases which, given time to carefully reflect on the merits, would not be brought. When the potential harm which results from reasonable delay is weighed against the anxiety and concern accompanying public accusation, it is clearly in the citizens' best interests to allow district attorneys some latitude in filing criminal cases. Each case would have to be reviewed constantly to determine whether a court might subsequently find that "probable cause" had existed at a given instant. To guess wrong might be fatal to the case: an arrest without probable cause, and a further investigation when probable cause exists, could be equally disastrous. We prefer to allow the investigating and prosecuting authorities more time in order to ensure proper arrests, rather than stampeding them into hastily accusing the wrong person, or filing a case on a inadequate factual basis.

The case at bar indicates that there may be emotional factors which cause delay even after "probable cause" clearly exists. Especially in rape and in child molestation cases such as the one at bar, the delay may not be due to the procedures in the prosecutor's office but rather to the understandable reluctance of the victim or victim's parents to sign a complaint or otherwise press charges.

---

3. "In all criminal prosecutions, the accused shall have the right to a speedy and public trial . . . ." Alaska Const. art. I, § 11, *see* U.S.Const. amend. VI.

4. Discussion of federal law is useful, but not binding upon us. We are not bound by federal law when interpreting the speedy trial provisions of the Alaska Constitution, so long as we observe minimum federal standards. *Cf. Marks v. State*, 496 P.2d 66, 68 § n. 2 (Alaska 1972); *Glasgow v. State*, 469 P.2d 682, 686 (Alaska 1970).

We note that the legislature has already put certain limitations on pre-accusation delay, in the form of a statute of limitations.[5] Furthermore, any prejudicial delay within the limitations period caused by police misconduct or the like can be attacked on "due process"[6] grounds. *See United States v. Marion, supra,* 404 U.S. at 324–26, 92 S.Ct. 455.

■ For these reasons, we now[7] join our sister states[8] in holding that the right to a speedy trial does not attach before the defendant becomes formally accused—that is, the subject of a filed complaint or an arrest.

Yarbor also asserts that the delay in his case violated his due process rights. We have stated that "both the absence of a valid reason for pre-accusation delay and the fact of prejudice must be established in order to support a due process claim."[9] We conclude that Yarbor has established neither.

■ The total period between the conclusion of the police investigation and service of the signed complaint was from August 1973 to March 1974. The delay between August and December apparently resulted in part from repeated review of the case by various members of the district attorney's office, and a further interview

with J. E.'s mother. Because of the particularly inflammatory nature of the charge, it does not appear to us at all unreasonable[10] that the decision to prosecute was carefully weighed and reviewed over this time period; certainly Yarbor has no cause for complaint that this was done. As for the period between December and March, appellant accepts as valid the inference that "the victim's mother had not decided whether or not she wanted the state to prosecute the case." The trial court, in denying appellant's motion, believed it important that the "private sector" and not the police were responsible for this delay. We find that in a child molestation case of this sort, it was not unreasonable for the state to wait this amount of time on a hesitant mother's decision whether to press charges. Possible emotional effects to the child, injury to the child's reputation, and family disruption,[11] all had to be considered in making her decision.

■ Yarbor assigns several grounds of prejudice to his defense. First, he contends that Officer Strickfaden and J. E. had faded recollections of the circumstances by the time of trial. He argues that because of this situation his right to engage in effective cross-examination was in effect denied with respect to these two

---

5. AS 12.10.010 imposes a five-year accusation limitation on all offenses except murder. In *Marks v. State,* 496 P.2d 66, 68 (Alaska 1972), we said that this was the "primary guarantee" against "overly stale criminal charges". We also recognized there the role of constitutional due process guarantees to "protect a defendant against the hazards of pre-accusation delay."

6. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7; *see* U.S.Const. Amend XIV, § 1.

7. On two previous occasions we have found it unnecessary to decide this issue. *See Tarnef v. State,* 512 P.2d 923, 931–32 (Alaska 1973); *Marks v. State,* 496 P.2d 66, 68 n. 2 (Alaska 1972).

8. *E. g., People ex rel. Coca v. District Court,* 530 P.2d 958 (Colo.1975); *State v. Lee,* 110 Ariz. 357, 519 P.2d 56 (1974); *Alexan-*

*der v. State,* 516 S.W.2d 368 (Ark.1974); *State v. Bessey,* 328 A.2d 807 (Me.1974); *Commonwealth v. Gove,* 320 N.E.2d 900 (Mass.1974); *State v. Burtchett,* 530 P.2d 471 (Mont.1974); *People v. White,* 32 N.Y. 2d 393, 345 N.Y.S.2d 513, 298 N.E.2d 659 (1973); *State v. Serrell,* 265 Or. 216, 507 P.2d 1405 (1973); *State v. Bryson,* 53 Haw. 652, 500 P.2d 1171 (1972). *People v. Sobiek,* 30 Cal.App.3d 458, 106 Cal.Rptr. 519 (1973).

9. *Marks v. State,* 496 P.2d 66, 68 (Alaska 1972); *See Tarnef v. State,* 512 P.2d 923, 931 (Alaska 1973).

10. *See Tarnef v. State,* 512 P.2d 923, 931 (Alaska 1973) ("it is not suggested and cannot seriously be concluded that it was unreasonable for the State to refrain from launching a prosecution . . . . ").

11. Yarbor is related to J.E.'s family.

witnesses. We think it appropriate to note at the outset that to some degree there are faded recollections in every criminal action, since generally cases are not brought to trial until a few months after the allegedly illegal incident occurs. In the instant case, however, we are simply unable to determine whether the delay had any effect on the defendant's cross-examination of these two witnesses because Yarbor failed to certify into the record on appeal the relevant parts of the transcript. Since Yarbor shoulders the burden of proving prejudice, we must rule against him on this point. Yarbor's second contention is that a potential witness, Brian Thompson, who lived at the premises where this incident occurred, may have provided exculpatory evidence had he been interviewed before May 16, 1974. In view of the fact that Yarbor is uncertain as to whether Thompson was even present when the event in question transpired, we find this allegation of prejudice too attenuated. Finally, Yarbor submits that because of the delay, he was unable to remember the conversation between him and the victim, which he contends constituted "a major element in the State's case." In response to this argument we need only refer to a sworn statement given by Yarbor on May 17, 1974:

> "I have personally heard J. E. testify on May 7, 1974 and on March 15, 1974. I have listened to the tape recording of [J. E.'s] testimony before the Grand Jury on April 9, 1974. . . . I have discovered numerous contradictions and discrepancies in [J. E.'s] testimony in these hearings. It is obvious to me that [J. E.] has been prompted and influenced with respect to a great deal of her testimony, has fabricated some of her testimony and presently has faulty recollection with respect to other matters of importance."

The foregoing does not establish the prejudice required to support Yarbor's due process claim.

Affirmed.