NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

SEAN WRIGHT,

                              Appellant,

            v.

STATE OF ALASKA

                              Appellee.

Court of Appeals No. A-10587
Trial Court No. 3AN-99-9876 CR

O P I N I O N

No. 2447 — March 27, 2015

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland and Michael Spaan, Judges.

Appearances:  Marjorie Mock, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.  Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Smith, Superior Court Judge.[*]

Judge ALLARD.

---

[*]    Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Sean Wright was convicted of one count of first-degree sexual abuse of a minor and multiple counts of second-degree sexual abuse of a minor for conduct involving his stepdaughter and the daughter of a prior long-term girlfriend. In this appeal, Wright argues that his constitutional right to a speedy trial under the federal and state constitutions was violated because there was almost five years of delay between the filing of the felony information charging Wright with this conduct and Wright's ultimate arrest and subsequent indictment.

We conclude that Wright's speedy trial right claim under the federal constitution is without merit given the generally accepted rule that a felony information filed in a court without jurisdiction to try the defendant is insufficient to trigger the protections of the Sixth Amendment's speedy trial provision. Our analysis is different, however, for Wright's speedy trial claim under the Alaska Constitution. Under our precedent, the filing of a felony information triggers the protections of the state constitutional right to a speedy trial.[1] We therefore conclude that Wright has a state constitutional speedy trial claim with regard to the pre-arrest, pre-indictment delay that occurred in his case.

However, for the reasons explained in this opinion, we conclude that a remand to the superior court is needed to properly resolve this claim. On remand, the superior court must take into account not only the five years of pre-arrest delay, which (as we explain) is fully attributable to the State, but also the five years of post-arrest delay, which the State claims is primarily attributable to Wright.

As a separate point on appeal in his co-counsel brief, Wright also argues that he is entitled to jail-time credit for the time he spent on electronic monitoring pending his trial. We find no merit to this claim and affirm the decision of the superior court on this issue.

---

[1] *See State v. Mouser*, 806 P.3d 330, 339 (Alaska App. 1991).

*Facts and procedural history*

Evelyn Wright had three daughters from a previous marriage when she married Sean Wright in November 1996. The family lived in Anchorage from 1996 until the summer of 1998, when they moved to Wasilla.

That Halloween, the family had a big party. Before the party started, Evelyn went to look for ten-year-old K.A. K.A.'s bedroom door was locked. Wright, who was inside the room, opened the door and said he locked it because K.A. was fighting with her sister.

Approximately three months later, in early February 1999, after watching a video at school about pedophilia, K.A. told her mother that she was being sexually molested by Wright. She reported that Wright came into her room on Halloween, locked the door, took off his pants, and touched her vagina with his fingers and tongue.

Evelyn and K.A. confronted Wright about K.A.'s allegations. Wright claimed he did not remember doing anything to K.A. Wright moved out two weeks later. The day after Wright left, Evelyn called the police.

Alaska State Trooper Ruthan Josten was assigned to the case. K.A. told Josten that Wright touched her breasts and vagina with his fingers and mouth and rubbed his penis against her vagina. Evelyn told Josten that Wright may have also abused the daughter of his prior long-term girlfriend, M.C.

Josten contacted M.C., who told Josten that Wright sexually abused her in Anchorage from 1987-1989, and that she went to live with her biological father to get away from Wright. At trial, M.C. testified that Wright initially began by rubbing her back and fondling her breasts. Later, he grew bolder and began to touch her vagina; he would also rub his penis between her thighs without penetrating her or ejaculating.

While the investigation into the sexual abuse was ongoing, Wright went to visit his brother in Arkansas. He subsequently decided to leave Alaska permanently.

In June 1999, after Wright left Alaska, Josten sent a report to the Palmer District Attorney's office requesting a warrant for Wright's arrest. That request was initially declined. Five months later, on November 12, 1999, the Office of Special Prosecutions and Appeals filed a criminal information charging Wright with eleven counts of sexual abuse of a minor. An arrest warrant was issued four days later.

The arrest warrant was entered into the Alaska Public Safety Information Network (APSIN), an Alaska-only database. However, even though the State was aware that Wright was living outside Alaska, the warrant did not designate Wright's offenses as extraditable, nor did the State enter the arrest warrant into the FBI's National Crime Information Center (NCIC) database. Josten apparently commented at the time that the State may have had financial reasons for not making the warrant extraditable.

From 2000 to 2004, Josten ran periodic searches for Wright in a national database that recorded driver's licenses, deaths, and other similar information. But Josten's searches were not comprehensive or consistent, and she failed to locate Wright.

Wright continued to communicate with Evelyn by telephone and mail during this time. He also received mail from the State of Alaska on other matters, including a notice of a hearing on the dissolution of his marriage to Evelyn from the Palmer trial court, a notice regarding his overdue student loans from the court system, and a death certificate that he requested from the Alaska Department of Health and Social Services.

In addition, throughout this time, Wright worked at a number of nuclear facilities that required security clearances. To obtain these clearances, Wright provided his name, address, date of birth, and social security number, along with copies of his driver's license and social security card. Had the warrant for Wright's arrest been entered into the national NCIC database, Wright's employers would have discovered the arrest warrant and the sexual abuse charges.

On September 17, 2004, almost five years after the felony information was filed, Sergeant Iliodor Kozloff of the Alaska State Troopers received a voicemail inquiry about Wright from a manager at a nuclear facility in Minnesota. Kozloff ran Wright's name through the APSIN database and saw that there was a warrant for Wright's arrest. He also checked NCIC, but discovered that the warrant was not in that database. Kozloff contacted the District Attorney's office, which then made the decision to extradite Wright and to enter the warrant into NCIC. Kozloff arranged for the local sheriff's office to arrest Wright when he returned to the facility the next day.

Wright waived extradition, and the Alaska State Troopers brought Wright back to Alaska, where a grand jury indicted him on eighteen counts of first- and second-degree sexual abuse of a minor for conduct involving K.A., M.C., and a third girl, T.W. (The counts involving T.W. were later dismissed because the statute of limitations had already run.[2])

Just under a year after the grand jury issued its indictment, Wright filed a motion to dismiss the indictment, arguing that the almost five-year delay between the filing of the felony information and his arrest violated due process and his constitutional right to a speedy trial.

---

[2] The counts involving T.W. related to conduct alleged to have taken place in either 1979 or 1980. At that time, the statute of limitations for first- and second-degree sexual abuse of a minor was five years. *See* former AS 12.10.010 (1980). In 1983, the legislature extended the applicable limitations period an additional five years. Because the original statute of limitations had not yet run, this meant that the statute of limitations for the alleged conduct involving T.W. expired sometime in either 1989 or 1990. *See State v. Creekpaum*, 753 P.2d 1139, 1144 (Alaska 1988) (describing 1983 legislative changes and consequences for cases where the original statute of limitations had not yet expired).

In 1992, the legislature abolished the statute of limitations for first- and second-degree sexual abuse of a minor. *See* ch. 79, § 19, SLA 1992; *see also* ch. 86, § 2, SLA 2001. The charges involving T.W. were nevertheless time-barred because the statute of limitations had already run before the legislative change went into effect.

Superior Court Judge Philip R. Volland denied Wright's motion, finding that the pre-arrest delay was partially attributable to Wright because he had failed to follow-up on the results of the investigation and because his frequent moves made him difficult to locate. Judge Volland also found that Wright had not shown that he had suffered any actual prejudice from the pre-arrest delay. Wright filed interlocutory petitions to this Court and the Alaska Supreme Court, which were denied.[3]

In the years following his arrest, Wright continued to litigate other pretrial issues and also changed lawyers multiple times. Wright's case finally went to trial in May 2009, almost five years after his arrest and indictment, and almost ten years after the initial filing of the felony information. Wright was out on bail on electronic monitoring for the majority of the post-arrest, post-indictment period of time.

On the eve of trial, Wright filed a "renewed motion to dismiss because of prosecutorial delay," again arguing that the *pre*-arrest delay violated his constitutional speedy trial rights. Wright did not make any speedy trial claims about the five-year *post*-arrest delay.

Superior Court Judge Michael Spaan, who presided over Wright's trial, denied the renewed speedy trial motion "for the reasons given by Judge Volland."

At trial, K.A. testified with specificity about the incidents of sexual abuse that occurred in Anchorage and the details of the Wasilla Halloween incident. However, K.A. was unable to recall details about the other sexual abuse that was alleged to have occurred in Wasilla. Based on K.A.'s lack of recall, Judge Spaan granted Wright's motion for judgment of acquittal on those Wasilla counts.

---

[3]   Wright also filed a petition for habeas corpus in federal district court. The petition was dismissed without prejudice under the doctrine of federal abstention. Wright appealed this dismissal to the Ninth Circuit, which affirmed on the same procedural ground. *See Wright v. Volland*, 331 Fed. App'x 496 (9th Cir. 2009).

M.C. also testified at trial and was able to recall all of the alleged incidents of sexual abuse.

Before the jury retired to deliberate, Wright renewed his speedy trial motion, claiming that the trial had shown that he was prejudiced by the pre-arrest delay. Judge Spaan again denied the motion, finding that the trial had not shown any prejudice to Wright's defense caused by the pre-arrest delay.

The jury convicted Wright of the eight counts of sexual abuse of a minor involving M.C. and the remaining five counts of sexual abuse involving K.A.

Judge Spaan sentenced Wright to a composite term of 14 years with 2 years suspended, 12 years to serve, and 10 years of supervised probation. Wright requested jail-time credit for the years he spent on electronic monitoring prior to trial. The court denied this request, ruling that Wright was not entitled to jail-time credit for electronic monitoring.

This appeal followed.

*Wright's claim that he became formally "accused" for purposes of the state and federal speedy trial provisions when the State filed a felony information in district court*

The speedy trial clause of the Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ... ."[4] Article I, Section 11 of the Alaska Constitution contains a nearly identical provision: "In all criminal prosecutions, the accused shall have the right to a speedy and public trial ... ."[5]

Under both provisions, a defendant must qualify as an "accused" before the protections of the speedy trial provisions are triggered.[6] "The general rule [is] that the speedy trial right attaches at the time of arrest or formal charge, whichever comes first ... ."[7] But the federal definition of "formal charge" differs from the definition under our state constitution.

The federal courts have repeatedly held that, for purposes of the Sixth Amendment, a "formal charge" means a criminal charge that "alone gives the court jurisdiction to proceed to trial ... ."[8] Therefore, a felony information filed in an Alaska

---

[4]    U.S. Const. amend. VI.

[5]    Alaska Const. art. I, § 11.

[6]    *United States v. Marion*, 404 U.S. 307, 320-21 (1971); *State v. Mouser*, 806 P.2d 330, 338 (Alaska App. 1991).

[7]    5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 18.1(c), at 110 (3d ed. 2007); *see Mouser*, 806 P.2d at 339 (citation omitted).

[8]    5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* § 18.1(c), at 111 (3d ed. 2007); *see United States v. Harris*, 551 Fed. App'x 699, 704 (4th Cir. 2014) ("The Sixth Amendment right to a speedy trial does not apply to ... pre-indictment delay, as it does not attach until the defendant has been indicted or arrested.") (internal quotation marks omitted); *United States v. Madden*, 682 F.3d 920, 930 (10th Cir.

(continued...)

– 8 –                                                           2447

district court, which has no jurisdiction to try the defendant on felony charges, is insufficient to trigger the speedy trial protections of the Sixth Amendment.[9] Instead, this type of pre-arrest, pre-indictment delay is evaluated only as pre-accusation delay under the due process clause of the federal constitution.[10] And, unlike a speedy trial claim, a pre-accusation claim always requires proof of actual prejudice to the defense.[11]

Here, Wright makes no pre-accusation delay claim and largely concedes that he cannot meet the actual prejudice standard required for such a claim. Instead, his

_____

[8] (...continued)
2012); *United States v. Dowdell*, 595 F.3d 50, 61 (1st Cir. 2010); *United States v. Rose*, 365 Fed. App'x 384, 389 (3rd Cir. 2010) (absent arrest, indictment required to trigger speedy trial right); *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002); *Cowart v. Hargett*, 16 F.3d 642, (5th Cir. 1994); *Pharm v. Hatcher*, 984 F.2d 783, 785-86 (7th Cir. 1993) (defendants are only "accused" for purposes of the Sixth Amendment when an official charging document vesting the court with jurisdiction to try them is filed); *Arnold v. McCarthy*, 566 F.2d 1377, 1382 (9th Cir. 1978) (a defendant is not "accused" prior to indictment even if a felony complaint has been filed); *Favors v. Eyman*, 466 F.2d 1325, 1327-28 (9th Cir. 1972) (filing of a criminal complaint does not trigger a defendant's Sixth Amendment rights); *but see United States v. Terrack*, 515 F.2d 558, 559 (9th Cir. 1975) (noting that "the filing of a criminal complaint, or the indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment") (internal quotations omitted).

[9] *See People v. Martinez*, 996 P.2d 32, 35 (Cal. 2000) (recognizing that filing of federal complaint in court without jurisdiction to try the defendant does not trigger protections of Sixth Amendment but does trigger protections of speedy trial clause of the California Constitution).

[10] *See United States v. Lovasco*, 431 U.S. 783, 790 (1977); *State v. Gonzales*, 156 P.3d 407, 411 (Alaska 2007).

[11] *Lovasco*, 431 U.S. at 790 (proof of actual prejudice is "a necessary but not sufficient element of a due process claim"); *Gonzales*, 156 P.3d at 411 ("To establish an unconstitutional pre-indictment delay, the defendant must prove both that the delay was not reasonable and that the defendant suffered actual prejudice from the delay.").

federal claim for relief relies on his assumption that the protections of the Sixth Amendment apply to the pre-arrest, pre-indictment delay that occurred in his case. Because that assumption is incorrect, we conclude that there is no merit to Wright's federal speedy trial claim.

However, the speedy trial analysis is different under the Alaska Constitution. In *State v. Mouser*, this Court acknowledged the "general consensus" that speedy trial rights are triggered by the formal filing of a public charge "in a form that would vest the court in which it is filed with jurisdiction to try the accused."[12] But we nevertheless held that the filing of a felony information in district court was still sufficient to trigger the protections of the Alaska Constitution's speedy trial clause.[13]

We based this holding, in part, on the Alaska Supreme Court's decision in *Yarbor v. State*.[14] In *Yarbor*, the State served a felony complaint on the defendant and subsequently indicted him.[15] On appeal, Yarbor argued that his right to a speedy trial under the state constitution attached as soon as the State had probable cause to charge him with a crime, even if the State had not yet initiated the prosecution.[16] The supreme court disagreed, holding instead that Yarbor's state speedy trial rights began to run on the date he became formally "accused" — which the court characterized as the date Yarbor became "the subject of a filed complaint or an arrest."[17]

---

[12] *State v. Mouser*, 806 P.2d 330, 339 (Alaska App. 1991).

[13] *Id.*

[14] 546 P.2d 564 (Alaska 1976).

[15] *Id.* at 565-66.

[16] *Id.* at 566.

[17] *Id.* at 567.

The State argues that this language in *Yarbor* was dictum and does not bind this Court. The State further argues that *Mouser* was wrongly decided and should be overturned.

We recognize that there is persuasive value in the State's arguments, particularly in the context of Wright's case. Wright asserts that he was unaware of the felony charges until his arrest, which means he was able to live freely and openly during this time, unaffected by the anxiety, stress, and "public obloquy" that such charges might otherwise bring.

We nevertheless decline to overrule *Mouser* for two reasons.[18] First, as the State recognizes, we have no authority to overturn *Yarbor*, and we are not fully persuaded that *Yarbor* should be read as narrowly as the State suggests. The question in *Yarbor* was when the defendant's speedy trial rights began to run. *Yarbor* involved a defendant who was subject to both a felony complaint and a later indictment, and the supreme court appears to have decided that his speedy trial rights commenced upon the filing of the felony complaint.[19]

Second, we still agree with the underlying reasoning in *Mouser* that a felony information (even without an indictment) represents the State's decision to end the investigatory phase of a case and formally and publicly charge the suspect with a crime.[20]

---

[18] *See State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996) (a prior decision should be overruled only if the court is clearly convinced that the precedent is erroneous or no longer sound because of changed conditions, and that more good than harm would result from overturning the case).

[19] *Yarbor*, 546 P.2d at 567.

[20] *Mouser*, 806 P.2d at 339.

Accordingly, we conclude that *Mouser* remains good law and that Wright became "accused" for purposes of Alaska's constitutional speedy trial protections when the felony information was filed.

*Why we conclude that a remand is required to resolve Wright's speedy trial claim under the Alaska Constitution*

Speedy trial claims under the Alaska Constitution are governed by the *Mouser/Barker* test, which directs courts to consider and balance four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant.[21] None of these four factors is sufficient, on its own, to support a finding that a defendant's speedy trial right was violated.[22] Rather, the factors "must be considered together with such other circumstances as may be relevant."[23]

Because the ultimate inquiry is whether the delay in bringing the accused to *trial* was unreasonable, this analysis necessarily takes account of the total pretrial delay. As the United States Supreme Court explained in *United States v. MacDonald*:

> Before trial, of course, an estimate of the degree to which delay has impaired an adequate defense tends to be speculative. The denial of a pretrial motion to dismiss an indictment on speedy trial grounds does not indicate that a like motion made after trial — when prejudice can be better gauged — would also be denied. Hence, pretrial denial of a speedy trial claim can never be considered a complete, formal, and final rejection by the trial court of the defendant's contention; rather, the question at stake in the motion to

---

[21] *Id.* at 340 (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[22] *See id.*; *see also Barker*, 407 U.S. at 533.

[23] *Barker*, 407 U.S. at 533.

dismiss necessarily "remains open, unfinished [and] inconclusive" until the trial court has pronounced judgment.[24]

*1. Length of the Delay*

The first factor, the length of the delay "is to some extent a triggering mechanism" for the rest of the balancing test.[25] Unless a defendant can show that the delay in his case caused *actual* prejudice, the defendant must show that the length of the delay was sufficient to qualify as "presumptively prejudicial."[26]

Under Alaska law, the length of delay is calculated by first excluding any periods of delay caused by the defendant.[27] Once this delay is excluded, any unexplained delay of fourteen months or longer is generally considered presumptively prejudicial for purposes of triggering inquiry into the other *Mouser/Barker* factors.[28]

---

[24] *United States v. MacDonald*, 435 U.S. 850, 858-59 (1978) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)); *see In re Kashamu*, 769 F.3d 490, 492 (7th Cir. 2014) ("[U]ntil the [trial] court proceedings are complete, the causes and duration of the delay, the defendant's responsibility for it, and the harm to the defendant for the delay, cannot be determined.").

[25] *Mouser*, 806 P.2d at 340 (quoting *Barker*, 407 U.S. at 530).

[26] *Id.* (citing *Barker*, 407 U.S. at 530).

[27] *Springer v. State*, 666 P.2d 431, 435 (Alaska App. 1983) (citing *Tarnef v. State*, 512 P.2d 923, 933 (Alaska 1973)).

[28] *Compare Rutherford v. State*, 486 P.2d 946, 947, 951-52 (Alaska 1971) (fourteen-month delay presumed prejudicial), *Glasgow v. State*, 469 P.2d 682, 688-89 (same), *and Mouser*, 806 P.2d at 339-40 (noting that "unexplained delays of fourteen months or more [are] presumptively prejudicial" and holding that approximately twenty-month delay must be deemed prejudicial), *with Nickerson v. State*, 492 P.2d 118, 120 (Alaska 1971) (absent actual prejudice, eight-month delay is not presumptively prejudicial).

Here, Judge Volland found that the almost five years of pre-arrest delay qualified as presumptively prejudicial for purposes of triggering inquiry into the other *Mouser/Barker* factors.  The State does not dispute this finding.

### 2. Reason for the Delay

The second factor,  the reason for the delay, is an inquiry into "whether the government or the criminal defendant is more to blame for [the] delay."[29]  Evidence that the prosecution engaged in deliberate delay to gain a tactical advantage weighs heavily against the government while more neutral reasons, such as negligence or overcrowded courts, weigh less heavily but are nonetheless relevant.[30]  Delay attributable to the defendant or to defense counsel weighs against the defendant.[31]

Here, Judge Volland found that the blame for the pre-arrest delay rested with both the State and Wright.  The judge faulted the State for failing to issue an extraditable warrant, but the judge also found that Wright's departure from the state, and his frequent changes of residence, made the State's efforts to locate him more difficult and expensive and were thus "causes of delay" directly attributable to him.

Wright argues that he should not be held responsible for any of the pre-arrest delay, given that he was unaware that charges had been filed, and given that none of his actions were directed at avoiding apprehension.

---

[29]   *Doggett v. United States*, 505 U.S. 647, 651 (1992).

[30]   *Barker*, 407 U.S. at 531; *see Doggett*, 505 U.S. at 657.

[31]   *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

We agree. As the State concedes in its appellate briefing, "Wright was not hiding out, and the State had avenues of locating him that likely would have produced him within a brief period."[32]

We note that although Wright moved frequently for work, he maintained an Arkansas driver's license and a physical address that other Alaska state agencies used to communicate with him.[33] Wright also repeatedly passed intensive security clearances that would have uncovered the arrest warrant if the information had been entered into the NCIC database. Given these facts, we conclude that the trial court erred in attributing partial blame for the pre-arrest delay to Wright.

However, the question of who is to blame for the lengthy *post*-arrest delay must be resolved by the superior court on remand. Although the State asserts that the bulk of this delay is attributable to Wright, the court made no direct findings on this issue.

*3. Wright's Assertion of his Right to a Speedy Trial*

The third factor is whether, and when, the defendant asserted his right to a speedy trial. A defendant's failure to assert the right to a speedy trial will generally make it difficult to prove he was denied that right.[34]

---

[32] *See United States v. Boone*, 706 F. Supp. 2d 71, 74-75 (D.D.C. 2010) (defendant not to blame for delay, even though he was aware of the investigation against him, when the defendant had no knowledge of the arrest warrant and was living at a relative's house where the government had reason to believe he resided).

[33] *See United States v. Brown*, 535 F.3d 344, 349 (6th Cir. 1999) (defendant not to blame for delay where defendant unaware of indictment and law enforcement did not attempt to contact defendant even though they knew they could potentially reach him through his attorney).

[34] *See Barker*, 407 U.S. at 529, 532.

Judge Volland found that Wright failed to assert his speedy trial right as soon as he could have because Wright failed to inquire into the status of the police investigation to determine if charges had been filed. But we agree with Wright that a defendant's knowledge that he is being investigated is not the same as knowledge that he has been accused.[35] Because Wright was unaware that charges had been filed, his failure to assert his speedy trial right prior to his arrest cannot be weighed against him.[36]

However, Wright's actions *after* he became aware of the charges are relevant to the superior court's assessment of this factor. As the United States Supreme Court explained in *United States v. Loud Hawk*, a defendant's assertion of his speedy trial right must be viewed in the context of the defendant's other conduct, including the filing of frivolous, repetitive, or unsuccessful motions.[37] Conduct suggesting that the defendant was not actually interested in a speedy trial, despite his protestations that his speedy trial rights have been violated, weigh against the defendant.[38]

---

[35] *See Boone*, 706 F. Supp. 2d at 77 ("Mere awareness that the police are looking for a person does not obligate that person to affirmatively seek out the police to find out what, if any, problem exists."); *see also United States v. Molina-Solorio*, 577 F.3d 300, 306 (5th Cir. 2009) ("[T]he law does not require [a defendant] to assume the existence of, and ask for a speedy trial on, a charge he is not actually aware of.").

[36] *Doggett*, 505 U.S. at 653-54.

[37] *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986); *see also United States v. Frye*, 489 F.3d 201 (5th Cir. 2007); *United States v. O'Dell*, 247 F.3d 655 (6th Cir. 2001).

[38] *Loud Hawk,* 474 U.S. at 315 (noting that the filing of "repetitive and unsuccessful motions" that serve to delay trial militates against finding that a defendant has asserted his speedy trial rights even when the defendant simultaneously moves for dismissal on speedy trial grounds); *see also Frye*, 489 F.3d at 211-12 (finding that motions for dismissal on speedy trial grounds do not amount to an assertion of the speedy trial right where the defendant also repeatedly sought continuances); *O'Dell*, 247 F.3d at 671-72 (finding that defendant did not assert his right to a speedy trial where he simultaneously filed multiple

(continued...)

Here, Judge Volland expressed concern that Wright was using various tactics to intentionally delay his trial. The State points to other instances of what appear to be delaying tactics on Wright's part, including repeatedly filing pro se motions that he had been warned would not be entertained by the court. We agree that Wright's post-arrest conduct is relevant to the superior court's determination of whether, and to what extent, this factor weighs in Wright's favor.

### 4. Prejudice to Wright

The fourth factor, prejudice, is assessed in the light of the purposes of the speedy trial provision: (1) to prevent undue and oppressive incarceration prior to trial; (2) to minimize the anxiety and concern accompanying public accusation; and (3) to minimize delays that impair the accused's ability to defend against the charges.[39] Because Wright was unaware that he had been charged prior to his arrest and was not incarcerated prior to his arrest, he can only claim the third type of prejudice.

This third type of prejudice — damage to the defense — is the most serious and the hardest to prove.[40] As the United States Supreme Court has noted, "what has been forgotten can rarely be shown."[41] Therefore, when the other *Mouser/Barker* factors

---

(...continued)
delaying motions).

[39] *State v. Mouser*, 806 P.2d 330, 338 (Alaska App. 1991) (citing *Rutherford v. State*, 486 P.2d 946, 947 (Alaska 1971)); *see Doggett*, 505 U.S. at 654 (citations omitted); *Barker*, 407 U.S. at 532 (citations omitted).

[40] *Doggett*, 505 U.S. at 655; *Barker*, 407 U.S. at 532.

[41] *Barker*, 407 U.S. at 532.

weigh heavily against the State, a showing of possible prejudice may be sufficient for the accused to prevail.[42]

Wright contends that because the pre-arrest delay in his case was so long, the court must apply an irrebuttable presumption of prejudice in his case. Although we agree with Wright that a presumption of prejudice applies to this case because of the length of the pre-arrest delay, we disagree that this presumption is irrebuttable.

In *Doggett v. United States*, the United States Supreme Court recognized that particularly lengthy and excessive pretrial delay can compromise the reliability of a trial in ways that "neither party can prove, or, for that matter, identify."[43] But the Court also recognized that "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria."[44] Instead, presumed prejudice is "part of the mix of relevant facts and its importance increases with the length of the delay."[45] Thus, a defendant is not entitled to relief based on excessive delay if the presumption of prejudice is "extenuated, as by the defendant's acquiesence," or if the presumption of prejudice is persuasively rebutted by the government.[46]

---

[42] *Mouser*, 806 P.2d at 342.

[43] *Doggett v. United States*, 505 U.S. 647, 658 (1992) (granting relief in case involving eight and a half years of post-indictment delay).

We note that *Doggett* and the other federal case law cited in this opinion remain merely persuasive authority in Wright's case because Wright's claim is limited to the additional protections he has under the Alaska Constitution. *See Waiste v. State*, 10 P.3d 1141, 1146-47 (Alaska 2000); *cf. People v. Martinez*, 996 P.2d 32, 36 (Cal. 2000) (declining to adopt *Doggett* analysis for pre-indictment pre-arrest speedy trial claim that could only be raised under state constitution).

[44] *Doggett*, 505 U.S. at 656 (citing *Loud Hawk,* 474 U.S. at 315).

[45] *Doggett*, 505 U.S. at 655-56.

[46] *Id.* at 658.

In this case, we have no findings on whether the lengthy post-arrest delay in this case extenuated the presumption of prejudice caused by the pre-arrest delay. Nor do we have findings on whether the State can successfully rebut the presumption of prejudice. The State urges us to find that it successfully rebutted any presumption of prejudice in Wright's case. It points out that the sexual abuse charges involving M.C. were already a decade old at the time the charges were filed against Wright and that long delays in reporting are not uncommon in sexual abuse cases.[47] The State also points out that K.A.'s memory problems at trial ultimately prejudiced the State rather than Wright, resulting in the trial judge granting judgments of acquittal on some of the counts involving K.A.

We agree that these are important factors to consider in evaluating whether the State rebutted the presumption of prejudice caused by the pre-arrest delay. But we conclude that this question is more appropriately resolved by the superior court as part of the larger remand needed in this case.

We therefore direct the superior court on remand to reassess Wright's speedy trial claim under the Alaska Constitution. In assessing Wright's claims under the *Mouser/Barker* test, the superior court should consider the *total* amount of pretrial delay that occurred in this case — that is, both the pre-arrest delay (which is attributable to the State for the reasons explained in this opinion) and the post-arrest delay (which has not yet been litigated and will require additional findings). In addition, the superior court should consider (1) whether the presumed prejudice caused by the pre-arrest delay in

---

[47] *Cf.* Minutes of House Judiciary Committee, House Bill 396, testimony of Cindy Smith, Executive Director of Alaska Network on Domestic Violence and Sexual Assault, log no. 375 (Jan. 17, 1998) (testifying in favor of eliminating statute of limitations for certain sexual abuse offenses because many victims of child sex abuse do not come forward until years after the offense and delay is not uncommon in prosecuting these cases).

Wright's case was extenuated by his subsequent post-arrest conduct; and, if not, (2) whether the State can successfully rebut the presumption of prejudice.

Once the superior court accords the proper weight to each of the *Barker/Mouser* factors, it must balance all four factors to determine whether Wright's constitutional speedy trial right under the Alaska Constitution was violated. The superior court should provide a copy of its written decision on this issue to this Court which will resume consideration of Wright's case at that time.

### *Why we conclude that Wright is not entitled to jail-time credit for the time he spent on electronic monitoring prior to trial*

At sentencing, Wright requested jail-time credit for the time he spent on electronic monitoring prior to trial. The superior court denied this request.

In his co-counsel brief, Wright argues that this decision was error. He acknowledges that AS 12.55.027(d) prohibits credit against a sentence of imprisonment for time spent on electronic monitoring, but he argues that the statute should not apply to him because it went into effect after he began his electronic monitoring.

We rejected a similar ex post facto claim in *Fungchenpen v. State*.[48] We held that the legislature's purpose in enacting AS 12.55.027 was to clarify pre-existing law and to confirm that jail-time credit would not be given for time served on electronic monitoring; the statute did not create new law.[49] Our decision in *Fungchenpen* controls Wright's claim.

Wright also argues that the restrictions placed on his freedom through the electronic monitoring denied him liberty without due process of law, and that his bail conditions were excessive in violation of the Fourteenth Amendment.

---

[48]   181 P.3d 1115 (Alaska App. 2008).

[49]   *Id*. at 1116.

We find no merit to these claims. In *Matthew v. State*, the defendant was subject to electronic monitoring and his conditions of release required him to be at his residence, his work, or directly commuting between the two, and to not consume alcohol.[50] We found that these conditions of release did not approximate incarceration because Matthew was unencumbered by institutional rules — as long as he was at home or at work, he could do whatever he wanted and associate with whomever he wanted.[51] Wright's conditions of release were more lenient than Matthew's, and were likewise not excessive or a denial of due process. We therefore affirm the superior court's decision denying Wright credit for time spent under electronic monitoring.

*Conclusion*

We REMAND this case to the superior court for further findings consistent with this opinion. We retain jurisdiction. The superior court shall issue its written decision within 90 days of the issuance of this opinion. If the parties wish to respond to the findings on remand, they shall file their memoranda within 30 days thereafter.

---

[50] *Matthew v. State*, 152 P.3d 469, 472 (Alaska App. 2007).

[51] *Id*. at 472-73.